LEOPOLD v. HOTEL SHELBURNE, Inc.   (No. 5877.)

(Supreme Court, Appellate Division, First Department.   May 29, 1914.)

1. MASTER AND SERVANT (§ 40*)—ACTION FOR BREACH OF CONTRACT—EVIDENCE.
    Evidence, in an action for damages for breach of a contract employing plaintiff as hotel bookkeeper and cashier, *held* to show that the employment was conditioned on his furnishing an indemnity bond.
    [Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 47–49; Dec. Dig. § 40.*]

2. APPEAL AND ERROR (§ 171*)—REVIEW—THEORY OF CASE.
    In an action for damages for breach of a contract employing plaintiff as hotel bookkeeper and cashier, the theory of a modified contract could not be raised for the first time on appeal.
    [Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 1053–1063, 1066, 1067, 1161–1165; Dec. Dig. § 171.*]

3. MASTER AND SERVANT (§ 43*) — BREACH OF CONTRACT OF EMPLOYMENT — QUESTION FOR JURY.
    On evidence in an action for breach of contract of employment, *held* that whether plaintiff bound himself by the contract to furnish an indemnity bond and as to the time when, if at all, he agreed to do so, were for the jury.
    [Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 57, 58; Dec. Dig. § 43.*]

Appeal from Appellate Term, First Department.

Action by Charles Leopold against Hotel Shelburne, Incorporated. From a judgment reversing a judgment of the City Court on a verdict for plaintiff for $966.88 damages for breach of a contract of employment and dismissing the complaint (84 Misc. Rep. 432, 146 N. Y. Supp. 289), plaintiff, by permission, appeals. So much of determination as reversed judgment of City Court affirmed, and so much thereof as dismissed complaint reversed, and new trial ordered.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Argued before INGRAHAM, P. J., and LAUGHLIN, CLARKE, SCOTT, and DOWLING, JJ.

Myle J. Holley, of New York City, for appellant.

George Wolf, of New York City, for respondent.

DOWLING, J. The plaintiff in his complaint alleged that on January 25, 1913, he was employed as a bookkeeper by the defendant for a term of five months from May 1, 1913, at a monthly salary of $125, together with board (not to exceed $4.85 a day) and lodging for the same period. He further alleged that he entered into the employ of the hotel May 1st, and remained therein until May 10th, when he was unjustifiably discharged, being paid in full up to said date. The defendant by its answer admitted that it employed the plaintiff as bookkeeper and cashier on or about January 25, 1913, at a salary of $125 a month, provided, First, that he should perform his duties satisfactorily, and, second, that he should furnish a security company bond for the faithful performance of his duties; that plaintiff was employed from May 1, to May 10, 1913, on which latter date he was discharged because the security company had refused to continue on his bond. Upon the trial plaintiff testified that about April 19th or 20th he was requested by defendant's president to go to work within 24 hours, if he could, instead of waiting until May 1st, to which he assented, and did so begin his employment 10 days or more in advance of the agreed time. He admits that on this day there was some talk about his giving the bond of a surety company, which he claims was the first time it was ever referred to. He denies that he ever agreed to furnish such a bond, or that it was a condition for his obtaining employment with the defendant or remaining therein. As a matter of fact he did, on April 21st, make a written application to the United States Fidelity & Guaranty Company for a bond covering his position as "head bookkeeper and cashier" with the defendant. On May 4th he was advised that the surety company had declined to remain on his bond, having so notified the defendant on April 30th, and plaintiff says he volunteered to do what he could to get the surety company to reconsider its determination. On May 6th he wrote a lengthy letter to the surety company, asking them to reconsider. He began it by saying:

"I am writing you in the hope that you will see conditions in the true light and grant me an opportunity of retaining my present position."

Towards its close he said:

"Hoping to be favored with an immediate reply, since the matter is most urgent and my whole future depends upon your action in this matter. Reisenweber's, with whom I am now connected, is holding up further action until I receive definite word from you on this matter. You will readily see that my position is at stake, and urge you to inform me immediately."

Despite this appeal, on May 10th the surety company called upon the defendant in writing to sign and return the notice previously sent, whereby plaintiff was removed from the scope of the general bond given by it to defendant. Thereupon, this being a reiteration of its refusal to bond plaintiff, defendant on the same day discharged him and paid him in full; he signing a receipt in full. Later the surety

company reconsidered its decision, but it was too late, for plaintiff had already been discharged.

[1] Defendant's contention is that from the very first interview, when plaintiff's hiring was discussed, it was made an absolute condition that he should furnish a surety company bond, since he was not only to keep books as a bookkeeper, but also to handle cash as a cashier. Plaintiff's own application for the bond shows that he was to act in both capacities. Some witnesses were produced as to the conversations had at the time of the hiring, and as to later admissions that he, unless he furnished a bond, could not keep his position. The case was submitted to the jury in a charge which presented clearly the sole question involved: Was the hiring an absolute one, or was it conditioned on plaintiff supplying a surety company bond to indemnify defendant for any possible loss arising out of the discharge of his duties as cashier? The jury found for the plaintiff, and we think that the verdict was against the weight of evidence, which, without analyzing it at greater length, seems to us to fairly establish that the hiring was a conditional one. The determination of the Appellate Term reversing the judgment was therefore correct, and should be affirmed.

[2] But it went further and dismissed the complaint upon the theory that there was a modification of the original contract by mutual consent in April, when plaintiff agreed to furnish the surety bond and went to work at once, instead of waiting until May 1st. It is only necessary to say on this proposition that no such issue was raised by the pleadings or submitted to the jury. Both plaintiff and defendant stood on the claim that the contract was made on or about January 25th, and defendant never set up or sought by proof to establish a modified contract. On the contrary, it insisted that such a bond was a condition of the original contract of hiring. The issue of a modified contract was never raised upon the trial in any way, and could not be urged for the first time upon an appeal.

[3] Furthermore, as there were issues of fact to be determined as to the terms of the hiring, as to whether plaintiff ever bound himself to furnish a bond, and as to the time when, if at all, he agreed so to do, these issues must be passed upon by a jury. In so far as the determination dismisses the complaint, it must be reversed, and instead thereof a new trial ordered.

So much of the determination of the Appellate Term as reverses the judgment of the City Court is affirmed; so much thereof as dismisses the complaint is reversed; a new trial is ordered, with costs of the appeal to abide the outcome of the trial. All concur.