MARTIN KORTJOHN and Another, Respondents, Appellants, *v.*
JOSEPH M. ADAMS, Appellant, Respondent.

First Department, June 23, 1936.

*Nathaniel Choloney*, for the defendant-appellant-respondent.

*Maurice Knapp* of counsel [*Samuel S. Allan* with him on the brief; *Arthur Joseph*, attorney], for the plaintiffs-respondents-appellants.

GLENNON, J. This appeal brings up for review an interlocutory judgment entered after trial at Special Term on the 2d of May, 1928. There are cross-appeals. Defendant asks that the judgment in favor of plaintiffs granting them an injunction, an accounting and costs, should be reversed and the complaint dismissed. Furthermore, that the judgment rendered in favor of defendant on his counterclaim be increased to the sum of $18,566.17. On the other hand, plaintiffs ask: (1) That the judgment should be affirmed in so far as it grants plaintiffs an injunction and directs an accounting to fix damages; (2) the judgment should be modified by directing an accounting in regard to income received by defendant after entry of judgment and down to October 1, 1935; and (3) that the judgment should be further modified by dismissing defendant's counterclaim and reversing the money judgment in his favor.

We are of the opinion that the judgment entered in favor of the plaintiffs should be reversed and their complaint dismissed. There is ample support in the record to sustain the ultimate facts found by the court to the effect that the plaintiffs breached the contract which is the subject of this suit. Since that is so, the court should not have entered an interlocutory judgment granting plaintiffs an injunction against the defendant and directing him to account.

Defendant Adams was engaged in the accounting business at 1133 Broadway, Manhattan, for a period of years prior to October 1, 1925. He inserted an advertisement in the New York *Times* wherein he stated, in effect, that he desired to sell his accounting practice. In answer thereto the plaintiffs visited him and as a result thereof the plaintiffs drew up the contract which was entered into on the 1st day of October, 1925, whereby defendant sold his

business to them. The price agreed upon between the parties and the manner of payment was somewhat unusual. Under paragraph 2, plaintiffs paid to defendant the sum of $3,500 to cover furniture, fixtures, equipment and supplies, and $1,301.22 for a certain account receivable. In paragraph 3, the plaintiffs further agreed to pay to the defendant " royalties in a total amount of thirty thousand dollars ($30,000) in the manner hereinafter described, except that if the gross income from the business hereby transferred shall be less than forty thousand dollars ($40,000) for the year ending September 30, 1926, and less than eighty thousand dollars ($80,000) for the two years ending September 30, 1927, then the total royalties shall be either 75% of the income for the first year or $37\frac{1}{2}\%$ of the income for the two years, whichever is higher."

Paragraph 4 then provides: " The royalties referred to in the preceding paragraph shall be paid as follows:

" $5,000 within ten days of the date of this agreement;

" 50% of all collections for the first three months from the accounts hereby transferred;

" 40% of all such collections during the second three months;

" 30% of all such collections during the third three months;

" 25% of all such collections during the fourth three months;

" 20% of all such collections after a year until the full amount shall have been paid."

It is apparent, therefore, that what the parties meant was that defendant was to receive, as part of the purchase price, the sum of $30,000 which was to be paid, in the manner indicated in paragraphs 3 and 4, out of the income of the business to be conducted at 1133 Broadway under the firm name and style of Adams, Kortjohn & Company. It might be well to note in passing that there is no dispute between these parties as to the original payments provided for, amounting in all to the sum of $9,801.22. A question did arise, however, as to the payments of the royalties. Plaintiffs contend that since the income from the business fell short of the so-called representations made by the defendant, they were not bound to advance the full amount provided for in the contract. Furthermore, they claimed that pursuant to paragraph 12, the defendant was actually indebted to them, since he " warranted " that the fees for monthly audits amounted to $1,602.50, and agreed to pay " any amount short of this average total " received.

The defendant on his part agreed for a period of ten years not to practice accountancy in the States of New York, New Jersey and Pennsylvania as principal or agent for any other office than that of the plaintiffs. Embodied also in the agreement there is

a contract of employment, wherein the defendant was hired to work for the plaintiffs for a period of one year at a salary of $625 per month, and a commission of ten per cent on all business in excess of $40,000 a year traceable to the practice and efforts of the defendant. The commission was never earned and consequently is not a subject of this dispute.

The contract of employment was entered into with a view, undoubtedly, toward retaining defendant's customers. The business at 1133 Broadway was conducted under the management of defendant Adams. Difficulties arose due to the fact that the earnings from the business did not come up to the expectations of the plaintiffs, with the result that they failed to live up to the agreement in so far as it pertained to the so-called royalties. Almost from the beginning plaintiffs pursued a general course of conduct which seriously interfered with the morale of the employees and undermined their efficiency. They finally decided to close the uptown office and transfer the business to the one maintained by them downtown. Efforts were made by the plaintiffs to have defendant consent to a modification of the contract. While at the outset it was the apparent purpose of the parties to conduct the business at 1133 Broadway, we find that within a period of four months thereafter plaintiffs wrote defendant: " After March 31st we cannot possibly continue to credit you with salary and traveling expenses unless the average business is much nearer to your representation of sixty thousand a year," and " that we proceed immediately with the dismanteling of the 1133 office, the discontinuation of the Adams name from the branch, and conduct the office as a full C. P. A. office, and to engage help at rates of salary and general productivity maintained at the downtown." Further, " My determination is definitely made, and no deviation will be made, without a written offer in acceptance or compromise by you. Verbal excuses and explanations will not be in order. * * * It might call your attention to the fact that ' it is ' no longer ' the opinion of all the parties ' that the name of Adams, Kortjohn & Company is a good drawing card, and there is no actual obligation to continue such a cumbersome arrangement for so little business."

The defendant was not paid his salary for the first half of the month of March, and furthermore, plaintiffs had fallen considerably in arrears in the payments due on the purchase price under the terms of the contract. Defendant, on March 22, 1926, left the employ of the plaintiffs after they had carried out their threats to dismantle the uptown office. On the following day defendant opened a new office at the 1133 Broadway address.

We are of the opinion that the defendant was justified in resuming the practice of his profession since the restrictive negative covenant was part and parcel of the entire contract, and was entered into by defendant in consideration of plaintiffs' agreement to pay him the purchase price in full. The defendant was not guilty of any fraudulent representations as to the income derived from his business prior to the time he transferred it to the plaintiffs. A fair construction of paragraph 12 of the agreement viewed in the light that it was drafted by the plaintiffs would lead to the conclusion that it was a representation by defendant of an existing fact and not a future guaranty that the monthly fees for audits amounted to the sum of $1,602.50. If we were to adopt the reasoning of the plaintiffs, since there is no limitation of time contained therein, the obligation would rest upon the defendant to reimburse plaintiffs monthly, regardless of time whenever the amount they received was less than the stipulated sum.

Since the plaintiffs saw fit to breach the contract they must be held to comply with its terms until March 23, 1926, the day defendant resumed his practice. Had the defendant remained quiescent he undoubtedly would have been entitled to receive on his counterclaim the full balance due under the original contract. However, by opening his new office in the same building at 1133 Broadway, and pursuing the same line of business in competition with the plaintiffs, he thereby relieved them of the payment of further installments which ordinarily would have been due under the provisions of paragraphs 3 and 4 of the agreement.

The judgment in so far as it grants defendant judgment on his counterclaim should be in all respects affirmed, and the interlocutory judgment in so far as it enjoins defendant and directs him to account, should be reversed, with costs to the defendant, and the complaint dismissed, with costs.

MARTIN, P. J., McAVOY, O'MALLEY and TOWNLEY, JJ., concur.

Judgment in so far as it grants defendant judgment on his counterclaim unanimously affirmed, and the interlocutory judgment in so far as it enjoins defendant and directs him to account, reversed, with costs to the defendant, and the complaint dismissed, with costs. The findings inconsistent with this determination should be reversed and such new findings made of facts proved upon the trial as are necessary to sustain the judgment hereby awarded. Settle order on notice.