DONALD H. CHRISTMAN, Respondent, *v.* WILLIAM C. STARR, Appellant.

Third Department, August 2, 1972.

*Gerald T. Hennessy* for appellant.

*Tabner & Carlson (John R. Miller* of counsel), for respondent.

GREENBLOTT, J. This is an appeal from a judgment of the Supreme Court in favor of plaintiff, entered in Albany County, upon a decision of the court at Trial Term, without a jury.

In 1961 the parties entered into a partnership whose business was the operation of a retail lawn and garden supply center engaged in the sale of equipment, plants, lawn and garden supplies under the name of " The Quality Bulb and Garden Center ". In 1967 the parties and a third person, one Putt, formed a corporation named Lansco, Inc., for the purpose of engaging in the landscape service business.

Late in 1967 the partnership was dissolved and respondent's interest was purchased by appellant for $46,000. The agreement provided for the payment of the balance of the purchase price, $25,000, pursuant to a bond secured by a mortgage requiring five annual $5,000 installments. It was further provided that the respondent would not engage in the business of " selling and distributing garden supplies, garden tools and equipment, buying and selling landscape items, or to engage generally in the business of a garden supply house or any other business of similar nature related thereto, within a radius of fifty (50) miles of the present business office ".

Subsequent to the dissolution of the partnership and until February of 1969, respondent continued to be engaged in the landscape business as an employee of Lansco, Inc. When problems arose between the parties, respondent commenced his own landscape contracting business which he named Don Christman, Inc. This corporation provided such services to its customers as the installation, maintenance and care of lawns.

Appellant made the first required payment on the balance due on the agreement on January 15, 1969, but refused to make further payments, alleging that the restrictive covenant had been breached by the respondent. Respondent then commenced this

action to recover the unpaid balance of $20,000. The trial court determined that respondent was entitled to recover on the bond, holding that respondent's activities were not in violation of the restrictive covenant.

This decision is supported by the record and should be affirmed. The partnership had never engaged in the landscaping business and, in our opinion, the parties never contemplated that the restrictive covenant was intended to cover the landscape service business. That business was the function of Lansco, Inc. which was not made a party to the dissolution agreement or mentioned in that instrument. Furthermore, the restrictive covenant does not contain language restricting respondent from engaging in the landscape service business.

The record also discloses that at the time the dissolution agreement was entered into, The Quality Bulb and Garden Center was not engaged in landscape contracting but left that business to Lansco, Inc. We must also take into consideration the fact that respondent continued his stock ownership in Lansco, Inc. following the sale of his interest in the retail business. Moreover, we note that after respondent ceased his active interest in Lansco, Inc. and formed his own corporation, appellant continued to refer landscaping business to respondent's new corporation. For these reasons we conclude that the parties never intended to include the landscape servicing business in the restrictive covenant. Hence respondent is not in violation of the restrictive covenant.

The judgment should be affirmed.

HERLIHY, P. J. (concurring). The appellant testified that with his consent the respondent resumed or entered into the business activities for which the appellant expected to be paid, and which activities he now alleges violate the restrictive covenant in the partnership dissolution agreement. The record contains no evidence that as a condition of giving such consent, the appellant required the respondent to accept anything less than the consideration set forth in the bond and mortgage agreement relating to the said dissolution agreement. Under such circumstances, considering the pleadings, there is no failure of consideration for the bond and mortgage nor do the business activities of the respondent constitute a violation of the restrictive covenant.

Accordingly, the judgment should be affirmed.

SIMONS, J. (dissenting). Respondent Christman, having the option to buy or sell the parties' partnership business, agreed to sell his interest to appellant Starr and received in payment, over and above the book value of the assets, the sum of $25,000 for

good will. To insure the continued existence of this good will, a restrictive covenant was included in the contract prohibiting Christman from competing with the former partnership within a radius of 50 miles for 5 years.

After the sale and at a time when he worked for Lansco, Inc., Christman organized Don Christman, Inc. to engage in a similar business at an address a few hundred feet from Quality Bulb. He now operates that business within a quarter of a mile of the former partnership on 12 acres of land, part of which is presently used for growing nursery stock and the remainder of which is being prepared for that use.

The trial court held in favor of Christman because it found he had not violated the restrictive covenant, but it held that even if the covenant was violated, the promise not to compete and the promised payment on the bond were independent so that the breach of the restrictive covenant would not excuse payment on the bond.

The members of this court are in agreement, that on the contrary, the payment was a promise dependent upon a performance of the covenant and therefore a breach of the covenant by Christman would excuse payment by Starr. (See *Rosenthal Paper Co.* v. *National Folding Box & Paper Co.,* 226 N. Y. 313; *Kortjohn* v. *Adams,* 248 App. Div. 106, 110; Restatement, Contracts, § 274.) However, the majority, in separate opinions, find no breach of the contract because (1) they hold the parties did not intend the covenant to cover the landscaping activities Christman admittedly engaged in after the sale of the partnership, or (2) they find Christman is entitled to recover on the bond because Starr waived performance, an analysis similar to the trial court's additional finding that Starr was estopped from asserting a breach. In our judgment, appellant has established a cause of action for breach of the restrictive covenant and we would reverse the judgment dismissing his counterclaim and order a new trial on that issue.

The covenant prohibits Christman from "selling and distributing garden supplies, garden tools and equipment, buying and selling landscape items or engag[ing] generally in the business of a garden supply house or any other business of similar nature related thereto". We are instructed that restrictive covenants in sales contracts are to be interpreted more strictly than those in employment contracts for the reason that one involves protecting the value of a going business, whereas the other interferes with a person's ability to earn a living. (*Purchasing Assoc.* v. *Weitz,* 13 N Y 2d 267.) Using that guide, it

would seem that if Quality Bulb performed the service or sold the product before the partnership sale contract and Christman performed the same type of business afterwards to the damage of Quality Bulb, Christman's liability for breach of the covenant would be established. That most certainly was the intention of the contracting parties in agreeing to the covenant.

In determining whether there was compliance with the covenant, consider Christman's testimony. Before he left the partnership at the end of 1967, the partnership sold, among other things, nursery stock, trees, shrubs, fertilizers, mulch, peat moss, hedges, manure and fences. He continued to sell all these items through his corporation, Don Christman, Inc., in 1969 and 1970. Before he left it, the partnership handled landscape proposals (usually prepared by Christman) occasionally doing the construction or labor work itself or sometimes referring it to others. After Lansco, Inc. was formed and advertised as an affiliate of Quality Bulb by the partners and Putt* in 1967, Quality Bulb performed its landscaping jobs by referring them to Lansco, and since the partners controlled Lansco, they did so with the understanding that Lansco would buy all its materials and plants from the partnership, at a markup in price. Considering that Lansco was an active business operation and that almost all its business was referred to it by the partnership, it is idle to say that the partnership did not engage in the landscaping business before the sale. On the contrary, the partnership derived substantial profits from such work directly and also indirectly by referral to Lansco and by supplying materials and labor to Lansco at a profit. Thus, Lansco's presence does not obscure Starr's right to recover, as the majority seem to think; it confirms it.

In an effort to avoid the clear language of the covenant, an attempt is made to distinguish between Quality Bulb and Christman because one is a landscape construction business and the other a landscape servicing business and because, it is said, plants or supplies that are "garden supplies" are different from "landscaping material". The argument is specious to say the least. If the covenant was not kept, Starr's loss is no less real because one form of business rather than another was used to accomplish that result. Christman's business involved a good deal more than the "installation, maintenance and care of lawns" and his own testimony establishes that he violated the express terms of the covenant both in the products sold and the services performed.

---

* Putt subsequently left Lansco.

There is no mystery about Christman's actions. He worked for Lansco in 1968 with Starr's consent. He left in early 1969 because he was unhappy about buying supplies from Quality Bulb at a markup. He wanted to operate his own previously formed corporation which he described as a '' continuation of Lansco ''. He admitted that after he left and took Lansco's equipment, it became defunct. His intention to violate the covenant and enter into competition with Starr was manifest. He sold some of the same products and performed some of the same services as Quality Bulb to the same prospective market within the proscribed geographic area.

If there were any further need for evidence to prove that Christman's present operation is within the intended terms of the covenant, it is easily inferred from the negotiations between the parties to effect a new agreement. If Christman and Starr did not consider themselves bound by the covenant, what possible motive could exist for negotiations to modify the financial arrangement under the partnership sale contract?

The other basis for the court's decision is that the actions of Starr were tantamount to a waiver of his rights. If so, the waiver cannot be based on any change in the contract. Both parties agree the original agreement remained in effect and expressly disclaim any modification was concluded. We are bound by their positions on the issue. (See *Wells* v. *Fisher,* 237 N. Y. 79; *Leopold* v. *Hotel Shelburne,* 162 App. Div. 771; 10 Carmody-Wait 2d, New York Practice, § 70:414 *et seq.*)

If there is a waiver, it must arise because of some form of estoppel because of Christman's reliance on Starr's conduct. The employment of Christman by Lansco, Inc. could not be such conduct. That employment was not inconsistent with the covenant because Christman was not competing with Starr. During 1969, when Christman left Lansco, Starr did not misrepresent or misstate the facts nor did he make any gratuitous promise with respect to the parties' relationship or their mutual obligations which could be construed to waive or estop him from asserting his rights under the contract. (See 1 Williston, Contracts [3d ed.], § 140, 5 *ibid.,* § 690 *et seq.*)

The testimony showed that Starr was willing to modify the contract in 1969 to eliminate the covenant and allow Christman to operate a competing business, but he was willing to do so only if there was an economic benefit to him to replace the value of the restrictive covenant. There were discussions and proposals and Christman even asked that a lawyer prepare a contract in blank for examination, but he conceded in his testi-

mony that he understood the restrictive covenant was still in effect until a suitable contract modification was concluded. He did not rely on any supposed promise or action of Starr that the covenant was no longer in force.

Christman voluntarily took the risk of operating a competing business in violation of his contract with Starr while the two negotiated on a substitute agreement. It has worked out very well for him. The court has ordered Starr to pay the balance of $20,000 due for the purchase of the business' goodwill and Christman is to be allowed to continue to operate down the road from his former partner.

The judgment dismissing appellant's counterclaim should be reversed, and a new trial ordered.

STALEY, JR., J., concurs with GREENBLOTT, J.; HERLIHY, P. J., concurs in a separate opinion in which STALEY, JR., J., concurs; SIMONS and REYNOLDS, JJ., dissent and vote to reverse in an opinion by SIMONS, J.

Judgment affirmed, without costs.