No. 17,743.

SCIENTIFIC PACKAGES, INC., ET AL. *v.* M. B. GWINN, ET AL.

(301 P. [2d] 719)

Decided September 24, 1956.

Mr. L. A. HELLERSTEIN, Mr. R. J. BERNICK, Mr. JOSEPH N. LILLY, for plaintiffs in error.

Messrs, MEANS, MEANS & ROBERTS, Mr. STANLEY H. JOHNSON, for defendants in error.

*En Banc.*

MR. JUSTICE KNAUSS delivered the opinion of the Court.

IN the trial court plaintiffs in error were plaintiffs and defendants in error were defendants. We will so refer to them, or by name. The order denying plaintiffs' application for a temporary injunction is the subject of this review. Plaintiffs bring the case here on writ of error.

Plaintiffs sought to restrain defendants from manufacturing, selling or marketing a shirt board and collar protector, based on a written contract dated March 16, 1953, between M. B. Gwinn and Jack Shapiro, whereby for a consideration Gwinn granted Shapiro an option to purchase all of Gwinn's interest in Scientific Packages, Inc., including all notes, debts, checks or claims for amounts advanced by Gwinn or National Paper Band Company to Scientific Packages, Inc. The contract was to be fully performed on or before ten days from its date. Shapiro purchased the notes and claims of Gwinn and National Paper Band Co. against Scientific Packages, Inc., together with Gwinn's stock therein, within the specified time. Scientific Packages, Inc. was not a party to this contract.

The contract between Gwinn and Shapiro also provided: "As a further consideration of this agreement it is mutually agreed * * * that said Gwinn or any company or corporation now controlled by him will not engage either directly or indirectly in the business of manufacturing, selling and distributing items now manufactured, sold and distributed by Scientific Packages, Inc. * * * of cardboard and consisting of a shirt board and collar protector * * * now produced and sold under the trade name, 'Flair' and 'Flash.'" Gwinn further agreed not to manufacture such items from any material in the United States for a period of five years.

The contract also provided: "As further consideration hereof it is mutually * * * agreed * * * that Gwinn and

all companies presently controlled by him be * * * released * * * from * * * all liability under that certain promissory note executed by the Buckmiller Manufacturing Company to the First National Bank * * * and guaranteed by said Gwinn and Shapiro. It is agreed that said Scientific Packages, Inc. shall within ten days of date hereof cause the guarantee of said Gwinn to be cancelled, rescinded and held for naught with the First National Bank of Denver." The contract further provided: "The parties agree that time is of the essence of this agreement."

It is admitted that Gwinn was not released from his obligation on the indebtedness to the First National Bank, either within the ten day period or at any time, and no offer to make such payment was set up in the complaint. As a result Gwinn after demand by the Bank acquired the note, paying therefor the sum of Ten Thousand Dollars.

Defendant, Die-Craft Corporation was organized in September, 1953, and Gwinn became one of its stockholders. In the Spring of 1954 this company produced and sold "Pak Rite," a shirt board and collar protector. It was this operation which plaintiffs sought to enjoin.

It is urged for reversal that the failure of Shapiro to obtain a release from the Bank of Gwinn's guarantee was waived by Gwinn or at most such promise of Shapiro to obtain it was "a collateral agreement and the nonperformance of it does not affect enforcement of Gwinn's promise not to compete."

As above noted, Scientific Packages, Inc. was not a party to the Shapiro-Gwinn option contract. It may be that Shapiro is the majority stockholder in Scientific Packages, Inc. but *he* is not that corporation. Just what connection plaintiffs Pepper, Tucker, Hirschfeld and Ginsberg have with Scientific Packages, Inc. does not appear from the complaint.

If we accept the defendants' view that the two contractual obligations are so related and dependent that

the rule applies that the party first guilty of a breach of an entire and unseverable contract cannot complain if the other party thereafter refuses to perform we must look to the evidence. Either the plaintiffs were unwilling to comply with the Shapiro contract, or were financially unable to do so. The trial court found from the voluminous record before him that there was a breach of the Shapiro agreement contained in the contract; that the breach was a material one, and that no legal excuse existed therefore. This finding is supported by competent evidence.

 It must of necessity follow that one who seeks specific performance of a contract must allege and prove complete performance on his part of all the terms and conditions of the agreement. Here, the plaintiffs, who seek to invoke equity, for some sixty or seventy days after the contract was made, and even up to the date of hearing on the application for a temporary injunction, failed to obtain the release from the Bank and did not tender such release either in their complaint or at the hearing.

The learned trial judge in his findings and conclusions said, among other things: "It seems to me it ill behooves one who seeks to invoke the equitable arm of this Court and who admits that he did nothing for a period of 60 to 70 days and even after discovering that the note had been paid — or bought — there is nothing to show that Mr. Shapiro did anything to compensate Mr. Gwinn, and the uncontroverted fact is Mr. Gwinn paid hard cash for it."

 We cannot, from the record before us, spell out a waiver on the part of Gwinn concerning the release which Shapiro agreed would be forthcoming from Scientific Packages, Inc. within ten days from the date of the contract. The exact language of the agreement is: "It is agreed that said Scientific Packages, Inc. shall within ten days of date hereof cause the guarantee of said Gwinn to be cancelled, rescinded and held for naught

with the said First National Bank of Denver." This was an obligation which Shapiro undertook to fulfill and constituted a substantial part of the consideration for the contract and was as much a part of the whole as was the other property agreed to be delivered upon exercise of the option. Gwinn could not compel Scientific Packages, Inc. to procure his release from the bank note because it was not a party to the contract.

The language of the contract lacks that clarity essential in cases of this character. It will be noted that it provides that "Gwinn or any company or corporation *now controlled by him*" will not engage in manufacturing, selling or distributing items *"now* manufactured, sold and distributed by Scientific Packages, Inc." (Emphasis supplied.) Die-Craft Corporation was not in existence on March 16, 1953, the date of the contract. It was not, and could not have been, a party to the contract which formed the basis of plaintiffs' action. Ample reasons appear in the record why Die-Craft Corporation was organized. It also appears that plaintiffs were ordering Die-Craft to make "Flair" and "Flash" for them, which orders continued until some two or three months prior to the institution of this action.

We must conclude that plaintiffs' failure to release Gwinn from liability on the note held by the Bank in accordance with Shapiro's promise was a substantial breach of the contract, which deprived plaintiffs of the right to demand performance by Gwinn of the agreement not to operate a competing business. The party who commits the first substantial breach of a contract is also deprived of the right to complain of a subsequent breach by the other party.

In *Kortjohn v. Adams,* 288 NYS 1035, 248 App. Div. 106, defendant sold an accounting business in return for payment of royalties and agreed not to practice accounting in a stated area for a given period of time. Plaintiff failed to pay the full purchase price, and defendant resumed his practice. The court there said: "We are of

the opinion that the defendant was justified in resuming the practice of his profession, since the restrictive covenant was part and parcel of the entire contract and was entered into by defendant in consideration of plaintiff's agreement to pay him the purchase price in full."

We hold that because of Shapiro's failure to fully perform his contract, he or those claiming by or through him are not entitled to specific performance thereof, and consequently may not enforce the restrictive covenant against Gwinn or Die-Craft Corporation from manufacturing and selling "Pak Rite."

The judgment is affirmed.