No. 21851.

Roger Montgomery and Holt Chew v. Caroline Tufford and H. E. Ferrill.
(437 P.2d 36)

Decided February 5, 1968.

Leslie A. Gross, for plaintiffs in error.

Walter L. Gerash, Milnor E. Senior, for defendants in error.

*In Department.*

Opinion by MR. JUSTICE PRINGLE.

THIS writ of error was brought by Roger Montgomery and Holt Chew, defendants below. It is directed to a judgment of the District Court of Jefferson County, entered on a jury verdict of $5,500 in favor of Caroline Tufford. The parties will be referred to as plaintiff and defendants, or by name.

Mrs. Tufford sued Montgomery, Chew and H. E. Ferrill for conversion of furniture, household goods and personal effects in an apartment she had rented from the defendants. She sought $5,000 compensatory damages and $2,500 punitive damages. The amended complaint alleged that Ferrill and Chew were partners and that Montgomery was their agent. Defendants' answer admitted ownership of the apartment house by Ferrill and Chew and that Montgomery was the manager, but denied that they had withheld plaintiff's property from her. They counterclaimed for rent and damage to the apartment, in the total amount of $1,435. Ferrill did not appear at the trial, nor in the arguments before this Court, although he was joined here as a defendant in error.

There was considerable conflict in the testimony at the trial. Mrs. Tufford's testimony was that she rented the apartment in February 1962, and paid the rent as it came due, up to May 1. Mrs. Tufford said that about May 20, she told Montgomery that she was going to Cheyenne, Wyoming, to obtain money for the May rent from her ex-husband, and Montgomery agreed to this; that about ten days later, she returned to find the lock on the apartment had been changed; that Montgomery sent her to see Ferrill, who told her that her furniture was no longer in the apartment; that she saw a clock in Ferrill's office which he admitted was hers; that she twice attempted to gain access to the apartment, with the help of a sheriff's officer and an attorney, but was unable to do so; that she finally was admitted to the

apartment in September and found all her furniture and appliances gone, "just clothing and bedding and dishes and things were left." She was unable to obtain possession of the remaining items because she refused to sign a release for the missing furniture.

Montgomery testified that he did not recall any conversations with Mrs. Tufford about the rent; that he told Ferrill she was delinquent in her rent and Ferrill instructed him to change the lock on the door; that he could recall no further conversations with either Ferrill or Mrs. Tufford until September, when he admitted Mrs. Tufford to the apartment; that sometime in June, one of the other tenants informed him that the door to Mrs. Tufford's apartment was open; that he repaired the lock, but did not observe the contents of the apartment; that he never saw any furniture removed from the apartment. Montgomery stated that he acted only on instructions from Ferrill and that he never had any business contacts with Chew, although he knew him to be one of the owners of the apartment house.

Chew testified that he and Ferrill each owned a half interest in the apartment house and that they also owned other properties; that he was an investor and Ferrill a builder; that profits and losses were shared fifty-fifty; that he and Ferrill had never filed partnership tax returns; that Ferrill was responsible for management of the apartment house, for which he was paid a fee; that he could not remember any conversations with Ferrill or Montgomery about Mrs. Tufford's delinquency in the rent, nor about her personal property, prior to the time this lawsuit was filed. Chew said he had "begged" Ferrill to come back to Denver from Scottsdale, Arizona, to testify at the trial, and offered to pay his fare, but that Ferrill had refused to do so.

Chew and Montgomery have raised the following allegations of error:

(1) The evidence was insufficient to support the verdict against either Chew or Montgomery;

(2) The plaintiff's proof of damages was insufficient; and

(3) The verdict was excessive.

Only the third point has merit, and therefore we reverse the judgment as to the amount of damages only.

Plaintiff contends by way of cross-error that the trial court erred in not awarding interest from the time of the conversion. We will discuss this point in conjunction with defendants' third assignment of error.

I.

Defendants contend that the evidence was insufficient to support the verdict against Chew because there was no evidence that a partnership relation existed between Chew and Ferrill. We do not agree.

C.R.S. 1963, 104-1-7(5)(a) makes receipt of a share of the profits of a business prima facie evidence that the person receiving it is a partner. Chew contends that the profits received in this case come within the exception contained in C.R.S. 1963, 104-1-7(5)(c), as "rent to a landlord," but the record is devoid of any evidence indicating that a landlord-tenant relationship existed between Chew and Ferrill. The mere fact that the profits involved here came from rental property does not bring them within the exception. Plaintiff's prima facie case thus stands rebutted only by Chew's bare denial of a partnership, and his statement that he never filed partnership tax returns with Ferrill. There was other evidence in the record concerning the business dealings between Chew and Ferrill which would support a jury finding that a partnership did exist in fact.

The instructions, prepared and submitted by the defendants without objection, told the jury that in order to hold Chew liable, they must find that (1) a conversion was committed by Ferrill; (2) Ferrill and Chew were partners at the time of the conversion, and (3) the conversion was committed by Ferrill, acting in the scope of the partnership business. The instruction went on to correctly list in detail the elements necessary to con-

stitute a partnership, and the liabilities of partners with respect to conversion by the partnership. There is ample evidence in the record to support a finding by the jury that each of the elements required for liability under the instruction given was present.

Defendants further argue that Montgomery should not have been held liable because he was acting only on Ferrill's orders. They rely on *Ashcraft v. Tucker,* 73 Colo. 363, 215 P. 877, which held that a servant who innocently obeys his master's orders could not be held responsible for conversion, *unless it be proved that he was a party to the conversion.* Montgomery denied any participation in, or knowledge of, the disposition of Mrs. Tufford's property. Mrs. Tufford's testimony, however, indicated a far greater participation on his part, and it was for the jury to decide which of these two versions was the more accurate. The jury having resolved the conflict in testimony in Mrs. Tufford's favor, its verdict against Montgomery will not be disturbed.

II.

Defendants contend that the trial court erred in allowing plaintiff to testify as to her damages by reading from a list prepared by her, and that the proof of damages was insufficient to establish the value of the property at the time of the conversion. We find this contention to be without merit.

Plaintiff testified that she prepared the list from memory, at her attorney's suggestion, the night before the trial, and added to it on the morning of the trial. It enumerated more than 100 items of furniture, clothing and personal effects. Since plaintiff drew the list at the time of the trial, almost three years after the alleged conversion, there is no basis for defendants' objection that she was not testifying from present memory. What had remained in her memory for three years, up to the morning of the trial, must be assumed to have remained there when she took the witness stand. The cases

cited by defendants relating to past recollection recorded are therefore not in point.

 Defendants agree that the use of the list here comes within the rule permitting use of a writing by a witness to refresh his present recollection. They argue, however, that the admission of Mrs. Tufford's testimony was erroneous because she did not first testify that her memory had been exhausted before referring to the list. The procedure outlined by defendants is the one usually followed, but because of the wide variety of situations to which the procedure must be adapted, considerable discretion is allowed the trial court in determining whether a witness should be allowed to use a writing as an aid to his testimony. See *Lawson v. Glass,* 6 Colo. 134; *Michigan Fire & Marine Ins. Co. v. Wich,* 8 Colo App. 409, 46 P. 687. In the instant case, if plaintiff had been required to enumerate the items to the limit of her memory, it still would probably have been necessary for her to go through the entire list in order to ascertain how many items had been overlooked. A good deal more time would have been consumed, and the result may well have been only to add to the confusion of the jury. In these circumstances, it was not an abuse of discretion to allow plaintiff to use the list initially as an aid to her testimony.

 Plaintiff's testimony itemizing the various articles she had lost included her estimate of their value. Defendants object to this on the grounds that plaintiff's valuation was "pure speculation and conjecture." The nature of the proof available to plaintiff was to a large extent restricted by the nature of the case, since none of the items in question were available. Plaintiff, as the owner, was competent to testify as to the value of her property. *Staten v. Famularo,* 81 Colo. 121, 253 P. 1066; *Sandberg v. Borstadt,* 48 Colo. 96, 109 P. 419. Her testimony indicates that most of the major items of furniture had been purchased less than a year before the events in question, and as to these, she gave her recollection

of their cost. Cost of household goods may be shown in connection with other things to enable the jury to infer the value of goods at the time of their loss or destruction. *Colorado Midland Ry. Co. v. Snider,* 38 Colo. 351, 88 P. 453. Other items converted were gifts, for which she gave an estimate of present value. For still others, she gave the cost of replacement. The jury was properly instructed that the measure of plaintiff's damage was the value of her property at the time of its conversion and was cautioned that "estimates of value which. are merely vague conjectures do not prove value." The property involved was of a kind with which most jurors would be familiar. In these circumstances, the proof of damages was sufficient to enable the jury to determine the value of the property at the time of its conversion. See *Colorado Kenworth Corp. v. Whitworth,* 144 Colo. 541, 357 P.2d 626; *Colorado Midland Ry. Co. v. Snider, supra; Burchinell v. Butters,* 7 Colo. App. 294, 43 P. 459.

III.

 Defendants' contention that the verdict was excessive must be sustained. Plaintiff asked for $5,000 actual and $2,500 exemplary damages, but no instructions were given or tendered on exemplary damages, nor was a form of verdict submitted segregating the damages. The rule in Colorado is that exemplary damages must bear a reasonable relation to compensatory damages. *Kresse v. Bennett,* 151 Colo. 549, 379 P.2d 807; *Barnes v. Lehman,* 118 Colo. 161, 193 P.2d 273; *Starkey v. Dameron,* 92 Colo. 420, 21 P.2d 1112, 22 P.2d 640. This rule requires that a verdict for exemplary damages be separately stated, in order to provide a basis for determining its reasonableness. *Colorado Kenworth Corp. v. Whitworth,* 144 Colo. 541, 357 P.2d 626.

 Since the verdict here was for the single sum of $5,500, with no allocation between compensatory and exemplary damages, we must treat the entire amount as compensatory. Plaintiff's estimate of value, if accepted completely and unequivocally, amounted

only to $5,151.39. A jury verdict of $5,500 cannot stand. *Lamborn v. Eshom,* 132 Colo. 242, 287 P.2d 43. It is not possible to order a remittitur of the excessive amount in this case, because we are unable to determine whether the jury intended part of its verdict to be for exemplary damages, and if so, what part. It is therefore necessary that the verdict be set aside, as to the amount of damages only, and that the cause be remanded for a new determination of damages.

Defendants also point out that the evidence is uncontroverted that Mrs. Tufford owed rent at least for the month of May. The jury was told to return a separate verdict for defendants for any amount found in their favor on their counterclaim. In the present state of the record it was error for the jury to fail to find that plaintiff owed defendants at least $133 for May rent, and the trial court should have granted defendants' motion for judgment n.o.v. to this extent.

Plaintiff alleges cross-error, contending that the trial court failed to award interest from the time of the conversion. It is clear that the rule in Colorado is that one whose property is converted is entitled, as part of his damages, to interest at the legal rate from the time of conversion on the amount found to be the value of the property converted. *Woodworth v. Gorsline,* 30 Colo. 186, 69 P. 705; *Omaha & Grant Smelting & Rfg. Co. v. Tabor,* 13 Colo. 41, 21 P. 925. Plaintiff in the instant case did not, in the trial court, ask for such interest in her pleadings; but since the case will be retried on the issue of damages alone she may if she wishes amend her complaint to include such a demand.

The judgment is reversed as to amount of damages only, and is in all other respects affirmed. The cause is remanded for further proceedings on the issue of damages, consistent with the views expressed herein.

MR. CHIEF JUSTICE MOORE, MR. JUSTICE DAY and MR. JUSTICE McWILLIAMS concur.