**Petitioner: William K. COORS, individually,**

**v.**

**Respondent: SECURITY LIFE OF DENVER INSURANCE CO., a registered domestic insurance corporation.**

No. 03SC682.

Supreme Court of Colorado.

May 23, 2005.

Horowitz Wake & Forbes, Jay S. Horowitz, Robert Fishman, Denver, for Petitioner.

Wheeler Trigg & Kennedy, LLP, John M. Vaught, Julie M. Walker, Michael D. Alper, for Respondent.

Bradley A. Levin, Thomas L. Roberts, Laura E. Schwartz, Denver, for Amicus Curiae Colorado Lawyers Association.

Johnson & Ayd, P.C., James D. Johnson, Denver, for Amicus Curiae Colorado Defense Lawyers Association.

KOURLIS, J.

This case concerns a life insurance policy issued by Security Life of Denver Insurance Company to William K. Coors. Coors sued Security Life for breach of contract, fraud and violation of the Colorado Consumer Protection Act ("CCPA") on the basis that Security Life charged Coors an expense charge of $.90 per $1,000 of basic benefit, rather than the $.131 per $1,000 rate provided for in the policy. The trial court ruled in favor of Coors on all counts, and awarded $1,085,506.73 in total damages, which included treble damages and attorneys' fees. The court of appeals affirmed in part and reversed in part in *Coors v. Security Life of Denver Ins. Co.*, 91 P.3d 393 (Colo.App.2003). The court of appeals' opinion addressed three issues on which we agreed to grant certiorari.[1] First, in reversing the decision of the

---

1. We granted certiorari on three issues:
   (1) Whether the court of appeals erred in concluding, as matter of law, that the record lacked substantial evidence of public impact resulting from the defendant's conduct, as required for

trial court, the court of appeals held that Security Life's conduct affecting at most one percent of policyholders could not constitute significant public impact as required to establish a private cause of action under the Colorado Consumer Protection Act. Second, the court of appeals held that Security Life was entitled to retain a termination penalty associated with the surrender of the policy by Coors; and third, the court of appeals held that in the absence of application of the treble damages provisions triggered by the Consumer Protection Act, Security Life was not liable for punitive damages.

We now affirm the court of appeals decision with respect to the issue concerning the CCPA. By operation of Colorado Appellate Rule 35(e), where the supreme court is equally divided, the judgment of the lower court shall stand affirmed.

On the second issue, we reverse the court of appeals decision that Security Life should be allowed to retain the termination penalty, and we permit such penalty as a measure of damages for Coors. Finally, we hold that there is sufficient evidence of Security Life's fraudulent and reckless behavior to support an award of exemplary damages in the amount of three times actual damages even without reference to the CCPA. Accordingly, we affirm in part, reverse in part and remand for entry of judgment consistent with this judgment.

## I. Facts

In December 1994, Coors, accompanied by his attorney, met with a representative of Security Life to consider purchasing life insurance. The parties reviewed illustrations for a Security Life Ultra UL policy. In the illustrations, the expense charge was depicted as $.90 per $1,000 of coverage but the expense charge to be used in calculating the

cash surrender value of Coors' policy was not discussed.[2]

Coors signed an application for an Ultra UL policy and tendered a check for the first premium of the policy. The policy became effective December 15, 1994. The face page of the written policy gave Coors a twenty-day right to review and return the policy. The terms provided that the monthly expense charges were $7.00 per policy per month and $.131 per $1,000 of basic death benefit per month during the first five years of the policy. Coors accepted the policy without review.

Security Life then sent Coors a disclosure statement that stated that the monthly expense charges were $7.00 per policy per month and $.90 per $1,000 of basic death benefit per month during the first five policy years. The disclosure statement was designated as an illustration, not a contract, and referred policyholders to their written policy to the extent that the disclosure statement was in conflict.

Each month for approximately three and one-half years, Security Life charged $.90 per $1,000 of basic death benefit, or $2,340 per month, to Coors' policy. Thus, the cash surrender value was depleted accordingly. Coors received annual statements in 1995, 1996 and 1997 that reflected the total expense charges deducted each year. He did not review them. Coors paid the $331,871 premium every year from 1994 to 1997.

In October 1997, Security Life learned that a "computer truncation error" had mistakenly printed the $.131 expense charge on 227 UL Ultra policies, including Coors' policy.[3] Security Life had intended to charge Coors $.90 per $1,000 and concluded that the misprint was a scrivener's error, which could be reformed. Security Life did not take action to correct this error until the spring of 1998.

violation of the Colorado Consumer Protection Act.
(2) Whether the court of appeals erred in holding that the petitioner was not entitled to surrender his policy without a penalty, despite Security Life's misconduct, which both courts considered a material breach of the insurance contract.
(3) Whether the court of appeals erred in reversing the district court's award of punitive damages and attorney fees.

2. The expense charge is based on actuarial computation varying according to age, gender and smoking status.

3. Counsel for Security Life explains this truncation error as a result of having a numerator that was too large thus affecting only Security Life customers with the highest level of life insurance coverage.

In June 1998, Security Life drafted a letter to Coors notifying him of the discrepancy. Security Life enclosed a new schedule page reflecting the $.90 expense charge and also enclosed a policy face page that contained the same date and twenty-day review provision as the original face page. The letter and enclosures were mailed to 192 UL policy holders, including Coors, on July 2, 1998.[4]

Coors received the letter July 6, 1998. On the same day, he requested a rescission of his policy and demanded a refund of all premiums paid, with interest, from the inception of the policy. Security Life informed Coors that the letter neither required action on his part nor triggered a new twenty-day review period. When Security Life refused to honor the right to return contained on the face page, Coors requested a surrender of his policy and demanded payment. Security Life issued Coors a check for $667,025.03; the surrender value of his policy less a termination penalty of $111,966.93.

Coors then filed an action against Security Life for breach of contract, bad faith breach of contract, fraud, violation of the Colorado Consumer Protection Act ("CCPA"), section 6–1–101, et seq., C.R.S. (2004), and punitive damages.

A bench trial was held in the Jefferson County District Court. The trial court ruled in favor of Coors on all counts and awarded Coors $1,085,506.73 in total damages, which included treble damages, attorney fees and interest pursuant to the CCPA.

The trial court delineated ten grounds for a finding of deceptive trade practices and also concluded that a violation of the Unfair Competition Deceptive Practices Act, section 10–1–101 et seq., C.R.S. (2004), is a per se violation of the CCPA.

The court of appeals reviewed the trial court's decision, affirming in part, reversing in part and remanding the case for further proceedings.[5] The court of appeals applied the test set forth in *Martinez v. Lewis*, 969 P.2d 213 (Colo.1998), and found that public impact was not proven as a matter of law because an impact on "at most one percent of the policyholders could not constitute public impact;" the challenged conduct was private in nature; Coors was a sophisticated businessman accompanied by counsel during the sales process for the policy; and there was insufficient evidence before the trial court regarding any impact on other policyholders.

The court of appeals affirmed the trial court's determination that a material breach had occurred, but held that the trial court erred in its conclusion regarding the implications of that breach. First, the court of appeals concluded that allowing Coors to surrender the policy without enforcing the contractual termination penalty would be unjust enrichment. Second, the court opined that the new face sheet sent in 1998 but dated 1994 was not a new or separate contract giving Coors a new twenty-day right to review and for that reason, Security Life properly deducted the termination penalty in compliance with the policy provisions.

Based on its conclusions of law, the court of appeals reversed and vacated the award of punitive damages and attorney fees. The case now comes before this court on the question of public impact required to trigger the CCPA, the proper interpretation of the termination penalty and punitive damages.

## II. Colorado Consumer Protection Act

■ One Justice is not participating in this case. The remaining Justices are evenly divided on the issue of whether Coors established sufficient evidence of public impact

---

**4.** Of the 227 Security Life customers who originally purchased UL insurance, 36 accounts had been closed or paid at the time the truncation error was discovered.

**5.** The court of appeals reviewed seven issues:
(1) Whether Security Life's challenged conduct constituted a violation of the CCPA.
(2) Whether Security Life was entitled to reformation.

(3) Whether Security Life's use of the $.90 expense charge constituted a material breach.
(4) Whether Security Life was entitled to a termination penalty upon Coors tendering his policy.
(5) Whether Security Life's conduct with respect to the 1997 premium payment constituted fraud by omission.
(6) Whether there is a basis for awarding punitive damages.

under the CCPA. Justices Kourlis, Rice and Coats would hold that there was no public impact for purposes of applicability of the CCPA. Justices Mullarkey, Bender and Hobbs would hold that there was public impact for purposes of applicability of the CCPA. Accordingly, there is no majority to overturn the court of appeals on this point, and the court of appeals opinion stands. *See* C.A.R. 35(e); *City and County of Denver v. Board of County Comm'rs*, 145 Colo. 451, 452, 359 P.2d 1031 (1961).

### III. Termination Penalty

■ Because we affirm the court of appeals' decision that Coors failed to establish significant public impact to support his CCPA claim, we now consider whether Security Life may enforce the contract's early termination penalty against Coors.

■ Under contract law, a party to a contract cannot claim its benefit where he is the first to violate its terms. *Scientific Packages, Inc. v. Gwinn*, 134 Colo. 233, 237, 301 P.2d 719, 722 (1956) (material breach deprives party of right to demand performance by other). It is undisputed that there was a valid contract between Security Life and Coors, and that Coors performed under the terms of the contract by paying his annual premiums. Hence, if Security Life materially breached the contract, it should not be entitled to enforce the early termination penalty against Coors.

■ Whether a breach is material is a question of fact. *Kaiser v. Mkt. Square Disc. Liquors, Inc.*, 992 P.2d 636, 640 (Colo. App.1999). A material term goes to the root of the matter or essence of the contract. *Interbank Invs., L.L.C. v. Vail Valley Consol. Water Dist.*, 12 P.3d 1224, 1229 (Colo.App. 2000). Materiality must be assessed in the context of the expectations of the parties at the time the contract was formed. *Id.* at 1229. The trier of fact should consider the importance or seriousness of the breach and the likelihood that the injured party will nonetheless receive substantial performance. *Converse v. Zinke*, 635 P.2d 882, 887 (Colo. 1981). Finally, findings supported by the record will not be disturbed on appeal. *Page v. Clark*, 197 Colo. 306, 592 P.2d 792 (1979).

Coors' insurance policy expressly provided a $.131 per $1,000 benefit monthly expense charge. Each month, Security Life deducted an expense charge of $.90 per $1,000. The trial court found that the expense overcharge had a material impact on the performance and surrender value of Coors' policy in the amount of $89,973.00 with interest in the amount of $44,880.80.

Although the court of appeals agreed with the trial court's finding that a material breach occurred, the court of appeals concluded Security Life was entitled to the termination penalty against Coors on the grounds that it would be inappropriate for Coors to receive 3 1/2 years of "free" life insurance and that Security Life serviced the policy and would have been obligated to pay the face amount of the policy in the event of Coors' death.

We disagree. In the case before us, Security Life materially breached the contract. As a result of that breach, Coors attempted to exercise his twenty-day right to return the policy. This should have relieved him of any obligation to pay a termination penalty. However, Security Life claimed the updated face page did not create a new twenty-day right to review. Coors then chose to surrender his policy.

We hold that as the breaching party, Security Life is not entitled to enforce the termination penalty provision.

### IV. Damages

■ The CCPA provides that a successful plaintiff is entitled to three times the amount of actual damages sustained "if it is established by clear and convincing evidence that such person engaged in bad faith conduct." § 6–1–113(2)(III), C.R.S. (2004). The trial court made lengthy findings in support of that conclusion and awarded damages as follows:

i. expense charge overcharges of $89,973.00

ii. interest on expense charge overcharges of $44,880.80

iii. surrender penalty recovery of $111,966.93

iv. interest on the surrender penalty recovery of $34,365.49.

v. totaling that amount, the trial court then trebled it to arrive at an award of $843,558.66, plus attorney fees and costs.

The court of appeals concluded that the CCPA does not apply to this case, and thus damages predicated on the CCPA cannot be upheld. The question is thus what portion of the damages award nonetheless survives.

First, the trial court expressly concluded that the plaintiff proved that Security Life had breached its contract with Coors in bad faith, and this opinion does not contravene that conclusion. The award of actual damages in the amount of $89,973.00 for the expense overcharge and $111,966.93 for the surrender penalty is sustained. Those amounts cannot be trebled by operation of the CCPA. Coors argues, however, that treble punitive damages are otherwise appropriate given the trial court's findings and conclusion. *See Anson v. Trujillo,* 56 P.3d 114, 120 (Colo.App.2002) (reversal of CCPA claim requires reinstatement of award of punitive damages).

## A. Punitive Damages

█ Punitive damages, and even treble punitive damages, are available in tort and contract actions under some circumstances. § 13–21–102, C.R.S. (2004). Bad faith breach of an insurance contract is such an action. *South Park Aggregates Inc. v. Northwestern Nat'l Ins. Co.,* 847 P.2d 218, 225 (Colo.App.1992); *Farmers Group, Inc. v. Trimble,* 658 P.2d 1370 (Colo.App.1982).

Punitive damages are covered by section 13–21–102 which provides:

(1)(a) In all civil actions in which damages are assessed by a jury for a wrong done to the person or to personal or real property, and the injury complained of is attended by circumstances of fraud, malice, or willful and wanton conduct, the jury, in addition to the actual damages sustained by such party, may award him reasonable ex-

emplary damages. The amount of such reasonable exemplary damages shall not exceed an amount which is equal to the amount of the actual damages awarded to the injured party... (3) Notwithstanding the provisions of subsection (1) of this section, the court may increase any award of exemplary damages, to a sum not to exceed three times the amount of actual damages, if it is shown that: ...(b) The defendant has acted in a willful and wanton manner during the pendency of the action in a manner which has further aggravated the damages of the plaintiff when the defendant knew or should have known such action would produce aggravation.

█ The general purposes of punitive damages under section 13–21–102 are punishment of the defendant and deterrence against the commission of similar offenses by the defendant or others in the future. *See, e.g., Frick v. Abell,* 198 Colo. 508, 602 P.2d 852 (1979). Consistent with these purposes, section 13–25–127(2), C.R.S. (2004), requires that punitive damages shall only be awarded in a civil action where the party asserting the claim proves beyond a reasonable doubt that the injury sustained was attended by circumstances of fraud, malice, or willful and wanton conduct. *Tri–Aspen Constr. Co. v. Johnson,* 714 P.2d 484, 486 (Colo.1986); *Frick,* 198 Colo. at 511, 602 P.2d at 853.

█ Coors argues that punitive damages and the trebling of such damages are supportable under those statutes, even absent the application of the CCPA.[6] Here, the trial court did award treble damages under the CCPA. A plaintiff is not entitled to recover both treble damages under the Colorado Consumer Protection Act and punitive damages under section 13–21–102. *Lexton–Ancira Real Estate Fund v. Heller,* 826 P.2d 819 (Colo.1992). The trial court noted that although a separate punitive damage award would have been duplicative of the treble damage award under the CCPA; "this is, however a case in which the deterrence pur-

**6.** There is no argument that the attorney fees award survives without the CCPA justification. *Beebe v. Pierce,* 185 Colo. 34, 521 P.2d 1263 (1974) (absent specific contract, statutory or pro-

cedural rules attorneys fees are not recoverable). Therefore, we do not address that component of the trial court judgment.

pose of the punitive damage statute would be well served."

The trial court's award of treble damages was based on clear and convincing evidence that Security Life engaged in bad faith conduct pursuant to section 6–1–113. Standing alone, this is an insufficient basis on which to impose punitive damages. Thus, we must consider whether the evidence supports the trial court's alternative conclusion that punitive damages would be appropriate even in the absence of treble damages under the CCPA.

The sufficiency of evidence to justify an award of punitive damages is a question of law. *Mince v. Butters*, 200 Colo. 501, 502, 616 P.2d 127, 129 (1980). In reviewing this issue, we consider the totality of the evidence viewed in the light most supportive of the verdict. *Frick*, 198 Colo. at 511, 602 P.2d at 854.

The trial court found that Security Life's conduct was accompanied by both fraud and willful and wanton conduct, either of which, if proven beyond a reasonable doubt, would sustain an award of punitive damages. We examine each in turn.

### i. Fraud

To establish fraud, the plaintiff must show that the defendant made a false representation of a material fact, knowing that representation to be false; that the person to whom the representation was made was ignorant of the falsity; that the representation was made with the intention that it be acted upon; and, that the reliance resulted in damage to the plaintiff. *Brody v. Bock*, 897 P.2d 769, 775–76 (Colo.1995).

The trial court held that Security Life's conduct constituted fraud by omission, causing Coors' damages. The trial court specifically identified the following actions as constituting fraud: that as early as October 1997 Security Life was aware of the computer truncation error that had affected the policies; though Security Life had actual knowledge in October 1997 that Coors had been significantly overcharged, Security Life failed to advise Coors of that material fact; Security Life published Coors' 1997 annual statement reflecting expense charges that it knew were inaccurate; and by omission, Security Life induced Coors to pay his December 1997 annual premium.

### ii. Willful and Wanton Conduct

In addition to fraud by omission, the trial court found that Security Life engaged in willful and wanton conduct. In the context of section 13–21–102, "willful and wanton conduct" means conduct purposefully committed which the actor must have realized was done heedlessly and recklessly without regard to consequences or the rights of the plaintiff. § 13–21–102; *see also Tri–Aspen*, 714 P.2d at 486; *Frick*, 198 Colo. at 511, 602 P.2d at 854. Where the defendant is conscious of his conduct and the existing conditions and knew or should have known that injury would result, the statutory requirements of section 13–21–102 are met. *See, e.g., Pizza v. Wolf Creek Ski Dev. Corp.*, 711 P.2d 671 (Colo.1985); *Clark v. Small*, 80 Colo. 227, 229–30, 250 P. 385, 386 (1926).

The trial court found that:

> Security Life acted unreasonably in adopting and implementing the Biles scheme, in preparing and sending a false and misleading letter to policyholders, in sending a right of review it never intended to honor and in attempting to deprive policyholders of their legal rights. Security Life knew that its conduct was unreasonable or acted in reckless disregard of the fact that its conduct was unreasonable .... The evidence has shown that Security Life's bad faith conduct continued after the lawsuit in this case was filed.

In reviewing the record, we find that the Biles memo specifically acknowledged that the proposed course of conduct "may turn out to be a very bad idea" and potentially viewed as "bad faith" by a court. Despite recognition of the risk to the rights of the insureds, Security Life adopted the Biles scheme.

Viewing the evidence in its totality and in a light most favorable to the verdict, we agree that the trial court's finding that Security Life's conduct was accompanied by circumstances of fraud and willful and wanton con-

duct was proven beyond a reasonable doubt. We now turn to the amount of punitive damages.

### B.    Amount of Punitive Damages

The size of a punitive damages award is committed in the first instance to the discretion of the fact finder, and a reviewing court will not disturb the award absent an abuse of that discretion. *Walford v. Blinder, Robinson & Co., Inc.,* 793 P.2d 620 (Colo.App.1990). Here, the trial court found that punitive damages in a ratio of one to one would be justified.

The trial court trebled damages by operation of the CCPA. That trebling cannot stand. However, Coors argues that the trial court provided alternative justification for such trebling sufficient to support the award even in the absence of the CCPA.

A trial court may increase an award based on behavior during the pendency of the case. § 13–21–102(3); *see also Tait v. Hartford Underwriters Ins. Co.,* 49 P.3d 337, 342–43 (Colo.App.2001) (damages trebled where defendant complained of expedited trial date, committed discovery violation in manner that required the court to hold hearings to insure compliance, delegated to counsel many of its continuing obligations to insured despite insurer's ongoing duty to insured). In this case, the trial court found that Security Life's conduct was exacerbated by its behavior during the pretrial phase. Specifically, it found that Security Life obscured and misrepresented who its decision makers were and failed to meet its most basic discovery and disclosure obligations even after being compelled to produce information.

### C.    Burden of Proof

Security Life argues that an award of exemplary damages may not be upheld here because the trial court did not state that it was making its findings beyond a reasonable doubt as required by section 13–25–127. *See Montgomery v. Tufford,* 165 Colo. 18, 26, 437 P.2d 36, 40 (1968) (a verdict for punitive damages must be separately stated in order to provide a basis for determining its reasonableness).

We are not persuaded. First, the trial court did not state in its order that it was making its CCPA findings by clear and convincing evidence, although such burden is mandated by section 6–1–113(2)(III) of the CCPA and Security Life did not challenge the trial court order on that basis.

Second, the trial court made findings that were not necessary to its CCPA award. It held that the purpose of the punitive damage statute would be well served by the imposition of punitive damages against Security Life in this case. The court opined that "[s]imply, a life insurance company must know and understand that it must abide by policies of the insurance it issues."

The trial court's findings on these points were detailed, specific and pejorative. The trial court minced no words in its conclusion that Security Life implemented a "patently deceptive and misleading scheme," blatantly obstructed discovery, and failed to understand its obligations to its policyholders and the public.

Accordingly, we conclude that the failure of the trial court to state that the evidence supported such findings beyond a reasonable doubt is not fatal, because the findings otherwise lead inexorably to just such a conclusion.[7]

### V.    Conclusion

Where one Justice of the Supreme Court does not participate and three Justices are in favor of affirmance of the judgment of the court of appeals and three Justices are in favor of reversal, the decision of the court of appeals must stand affirmed by operation of law. We thus affirm the court of appeals on Coors' CCPA claim.

Conversely, we conclude that Security Life, as the breaching party, was unjustified in retaining the termination penalty. We reverse the court of appeals on that point.

7. Upon remand, the trial court will need to address the proper computation of interest on the judgment.

Lastly, we conclude that the record supports an award of exemplary damages in an amount of three times the actual damages, even without application of the CCPA.

In summary, we affirm in part, reverse in part and remand the case for further proceedings consistent with this judgment, including the calculation of interest on the award.

Justice KOURLIS delivered the Judgment of the Court with respect to Part II (CCPA) and the Opinion of the Court with respect to Parts I, III, IV, and V.

Justice BENDER specially concurs and Chief Justice MULLARKEY and Justice HOBBS join in this special concurrence.

Justice MARTINEZ does not participate.

Justice BENDER, specially concurring.

I join the opinion of the majority in Part I (Facts) and Part III (Termination Penalty). Because I would hold that Coors has established sufficient evidence of public impact under the CCPA, I would not reach the damages issue in Part IV of the majority opinion. Nonetheless, I join Part IV because I agree that the evidence supports an alternative basis to award similar damages to Coors.

I am authorized to state Chief Justice MULLARKEY and Justice HOBBS join in this special concurrence.