24CA0680 Wine v Weiman 05-01-2025

COLORADO COURT OF APPEALS

---

Court of Appeals No. 24CA0680
Arapahoe County District Court No. 19CV30266
Honorable Don J. Toussaint, Judge

---

Alyn D. Wine and Wine Properties, LLC,

Plaintiffs-Appellees,

v.

Julie A. Weiman,

Defendant-Appellant.

---

JUDGMENT AFFIRMED

Division I
Opinion by JUDGE YUN
Román, C.J., and Berger*, J., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced May 1, 2025

---

Fennemore Craig, P.C., David A. Laird, Allison M. Hester, Denver, Colorado, for Plaintiffs-Appellees

Van Remortel LLC, Fred Van Remortel, Littleton, Colorado, for Defendant-Appellant

*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24-51-1105, C.R.S. 2024.

¶ 1    Defendant, Julie A. Weiman, appeals the district court's judgment in favor of plaintiffs, Alyn D. Wine and Wine Properties, LLC, finding Weiman liable for breach of contract, fraud, and civil conspiracy. She contends that the court erred by (1) finding that certain deeds of trust were invalid because they were part of a fraudulent scheme; (2) finding that Weiman fraudulently induced Wine to enter into a settlement agreement; (3) granting partial summary judgment to Wine on his breach of contract claim; (4) excluding certain evidence; and (5) finding that Weiman participated in a conspiracy that caused Wine to suffer damages. We disagree with these contentions and therefore affirm the judgment.

## I.    Background

¶ 2    Weiman's husband, Antheiaus Conquest, entered into an informal real estate investment partnership with Wine. Conquest located, and Wine put up most of the money to purchase, six rental properties. The properties were purchased in Weiman's name because she "worked at a bank and was able to get financing relatively simply."

¶ 3     Then, without consulting Wine, Conquest and Weiman sold two of the rental properties and used the proceeds to purchase a house for themselves, which we will refer to as Arapahoe. At that point, feeling that Conquest was "running very, very loose and wild," Wine sought to formalize their business relationship. Weiman and Conquest gave Wine a promissory note for $570,000, which represented the money Wine had invested in the partnership. The promissory note was secured in June 2017 by a deed of trust (the Wine DOT) encumbering Arapahoe and the four remaining rentals, which we will refer to as Joliet, Elkhart, Lansing, and Kramer (together, the rentals).

¶ 4     Weiman and Conquest eventually defaulted on the promissory note. Wine sued, Weiman and Conquest countersued, and the following events took place.

    A.     The Street Investments, LLC, Deeds of Trust

¶ 5     Conquest told his extramarital girlfriend that he needed money for attorney fees and persuaded her to lend him $86,000. He drafted two promissory notes in which his business entity, Conglomeride, promised to repay the $86,000 to Street Investments, LLC (SIL), an entity that did not exist at the time. To

secure the promissory notes, Weiman granted SIL deeds of trust encumbering Joliet and Elkhart (the SIL DOTs). The two SIL DOTs were signed by Weiman and executed on August 6 and September 8, 2018. They did not contain legal descriptions of the properties they purported to encumber and were not recorded.

## B. The Settlement Agreement

¶ 6 On September 10, 2018, two days after the second SIL DOT was executed, Weiman was deposed. During her deposition, she said that the rentals were encumbered only by bank loans and the Wine DOT. Despite being explicitly questioned about "encumbrances that you're aware of," she did not mention the SIL DOTs.

¶ 7 Nine days later, on September 19, 2018, the parties settled. The settlement agreement provided:

- Wine would pay Weiman and Conquest a total of $40,000.

- Wine would use his best efforts to take out new loans to resolve the mortgages on the rentals.

- Wine would make the mortgage payments on the rentals until replacement financing was secured.

- Weiman and Conquest would transfer title to the rentals to Wine by quitclaim deed, effective October 1, 2018.

- Wine would release the Wine DOT encumbering Arapahoe and the rentals and deem the $570,000 promissory note paid in full.

- Weiman and Conquest would transfer the leases and deposits on the rentals to Wine.

- Wine would be entitled to all rental income from the rentals, effective October 1, 2018.

### C.    The Foreclosure

¶ 8    On September 24, 2018, Conquest's girlfriend formed SIL as a limited liability company with the Colorado Secretary of State.  On September 29, ten days after the settlement agreement was signed and two days before the transfer of title to Wine became effective, the SIL DOTs were recorded.

¶ 9    After Wine took title to the rentals, SIL, under Conquest's direction and at his expense, hired a lawyer to foreclose on the SIL DOTs.  Wine learned of the SIL DOTs in January 2019 when he received a notice of sale on Elkhart.

¶ 10    Wine filed suit against Weiman and Conquest, asserting claims including fraud, conspiracy, and breach of the settlement agreement. Weiman and Conquest countersued, alleging that Wine had breached the settlement agreement first.

## D.    The Home Invasion

¶ 11    In the early morning hours of December 11, 2019, Conquest and his son entered Wine's home armed with guns. Conquest woke up Wine and his caretaker, threatened them with his firearm, and struck Wine in the body and face. Conquest demanded another $40,000 check, demanded that Wine sign a quitclaim deed transferring title of the rentals to Conquest, and stole $3,000 in cash, all while holding Wine at gunpoint. Conquest fired his weapon, but no one was hit.

¶ 12    Conquest was later arrested at his girlfriend's home. While detained, he called Weiman and directed her to go to the girlfriend's house to recover his personal items and delete information from his phone. Following Conquest's instructions, Weiman went to the girlfriend's house in the middle of the night.

## E. The District Court's Rulings

¶ 13 In March 2020, the district court granted partial summary judgment to Wine on his breach of contract claim, finding that Weiman and Conquest had breached the settlement agreement when they "collected rents for the [rentals] for October 2018 and did not remit those rents to Wine." The court dismissed Weiman and Conquest's breach of contract counterclaim with prejudice.

¶ 14 The remaining claims proceeded to a three-day bench trial in November 2023. After trial, the court entered judgment in favor of Wine and Wine Properties, LLC.[1] As relevant here, the court found:

- The SIL DOTs were invalid, did not encumber Joliet or Elkart, and could not be used to foreclose on those properties.

- Conquest and Weiman fraudulently induced Wine to enter into the settlement agreement.

- In addition to withholding the October 2018 rent payments, Conquest and Weiman also breached the settlement agreement by retaining the security deposits

---

[1] Wine Properties, LLC, was joined as a plaintiff after the summary judgment.

6

for the rentals and redirecting Wine's mortgage payments on the rentals to Arapahoe.

- Conquest, Weiman, Conglomeride, and SIL "were parties to a conspiracy to fraudulently induce [Wine] into the [s]ettlement [a]greement and thereafter unlawfully regain from [him] much of the consideration given for the [s]ettlement [a]greement."

¶ 15    Weiman now appeals.[2]

## II.    Validity of the SIL DOTs

¶ 16    Weiman contends that the district court erred by finding that the SIL DOTs are invalid because they were part of a fraudulent scheme.  We are not persuaded.

### A.    Governing Law and Standard of Review

¶ 17    "An agreement to perpetrate a fraud on a third person is illegal and void." *Armstrong v. Gresham*, 213 P. 114, 115-16 (Colo. 1923); *see HMLL LLC v. MJM Holdings Ltd.*, 2024 COA 85, ¶ 43

---

[2] Initially, Conquest, SIL, and Weiman all filed separate appeals. Conquest's and SIL's appeals have been dismissed.  Weiman's appeal is the only one remaining.

(promissory note was "void as against public policy" because of "its integral role in the perpetration of [an] illegal scheme").

¶ 18    "We review a trial court's judgment entered following a bench trial as a mixed question of fact and law." *Fear v. GEICO Cas. Co.*, 2023 COA 31, ¶ 15, *aff'd on other grounds*, 2024 CO 77. "We review legal conclusions de novo and will disturb factual findings only if they are clearly erroneous and not supported by the record." *Id.* (citations omitted).

## B.    Discussion

¶ 19    The district court found that the SIL DOTs were instruments of fraud because they were intended to enable Conquest and Weiman to "unlawfully regain from [Wine]" two of the four rentals that constituted consideration for the settlement agreement. The district court's finding is supported by the following evidence in the record:

- Weiman concealed the existence of the executed but unrecorded SIL DOTs in her deposition prior to settlement.

- The SIL DOTs were not recorded until ten days after the settlement agreement was signed.

8

- The SIL DOTs were recorded without legal descriptions of the properties they purported to encumber.

- Conquest orchestrated and paid for the foreclosure proceedings against his own entity, the purported borrower.

¶ 20 Because the district court's finding that the SIL DOTs were instruments of fraud is not clearly erroneous, we will not disturb it on appeal.

## III. Fraudulent Inducement

¶ 21 Weiman contends that the district court erred by finding that she fraudulently induced Wine to enter into the settlement agreement. We disagree.

### A. Governing Law and Standard of Review

¶ 22 The elements of fraud are as follows:

> (1) A false representation of a material existing fact, or a representation as to a material existing fact made with a reckless disregard of its truth or falsity; or a concealment of a material existing fact, that in equity and good conscience should be disclosed. (2) Knowledge on the part of the one making the representation that it is false; or utter indifference to its truth or falsity; or knowledge that he is concealing a material fact that in equity and good conscience he should disclose.

9

(3) Ignorance on the part of the one to whom representations are made or from whom such fact is concealed, [of] the falsity of the representation or of the existence of the fact concealed. (4) The representation or concealment made or practiced with the intention that it shall be acted upon. (5) Action on the representation or concealment resulting in damage.

*Trimble v. City & Cnty. of Denver*, 697 P.2d 716, 724 (Colo. 1985) (quoting *Bemel Assocs., Inc. v. Brown*, 435 P.2d 407, 409 (Colo. 1967)), *superseded by statute on other grounds*, Ch. 166, sec. 4, § 24-10-105, 1986 Colo. Sess. Laws 876, *as recognized by Colo. Dep't of Transp. v. Brown Grp. Retail, Inc.*, 182 P.3d 687, 688 (Colo. 2008).

¶ 23     Whether a person has a right to rely on a misrepresentation "is a question of fact and is binding on appeal if supported by the evidence." *Colo. Coffee Bean, LLC v. Peaberry Coffee Inc.*, 251 P.3d 9, 17 (Colo. App. 2010) (quoting *M.D.C./Wood, Inc. v. Mortimer*, 866 P.2d 1380, 1382 (Colo. 1994)). "However, '[t]he determination of the sufficiency and validity of an exculpatory agreement is a question of law for the court to determine.'" *Id.* (quoting *Jones v. Dressel*, 623 P.2d 370, 376 (Colo.1981)).

## B. Discussion

¶ 24    Weiman does not challenge the district court's finding that the elements of fraud were satisfied. Nor could she successfully do so, as the record demonstrates that (1) Weiman executed the SIL DOTs but concealed their existence from Wine; (2) she knew she was concealing the existence of the SIL DOTs; (3) Wine was ignorant of the existence of the SIL DOTs; (4) Weiman intended that Wine enter into the settlement agreement believing that, as she said in her deposition, the only encumbrances on the rentals were bank loans and the Wine DOT; and (5) Wine acted to his detriment on Weiman's misrepresentation.

¶ 25    Instead, Weiman argues that Wine's fraudulent inducement claim must fail because Wine (1) "had constructive notice of the recorded SIL DOTs" and (2) "waived his rights to his fraudulent inducement claim." We are not persuaded.

¶ 26    First, the SIL DOTs were not recorded until *after* the settlement agreement was signed. Indeed, the district court found that Conquest and his girlfriend "purposefully failed to record" the SIL DOTs until after Wine entered into the settlement agreement. We thus cannot agree with Weiman that Wine had constructive

11

notice of the SIL DOTs and that "any undiscovered facts were of his own making."

¶ 27 Second, the provisions in the settlement agreement did not constitute a waiver of Wine's fraudulent inducement claim. Weiman directs our attention to a provision titled "Unknown Facts" that states,

> This Agreement includes claims of every nature and kind, known or unknown, suspected or unsuspected, up to and including the dates on which each Party executes this Agreement. The Parties acknowledge they may hereafter discover facts different from, or in addition to, those which they now know to be or believe to be true with respect to the Agreement, and the Parties agree this Agreement and the releases contained herein shall be and remain effective in all respects, notwithstanding such different or additional facts or the discovery thereof.

Because Wine acknowledged that he might later discover "facts different from" those he believed to be true when he entered into the settlement agreement, Weiman argues, he cannot claim that he was fraudulently induced to enter the contract.

¶ 28 But "[m]ost courts will not enforce exculpatory and limiting provisions if they . . . purport to relieve parties from their own willful, wanton, reckless, or intentional conduct." *Rhino Fund,*

*LLLP v. Hutchins*, 215 P.3d 1186, 1191 (Colo. App. 2008); *see also Thomas H. Lee Equity Fund V, L.P. v. Mayer Brown, Rowe & Maw LLP*, 612 F. Supp. 2d 267, 288 (S.D.N.Y. 2009) ("An agreement induced on knowingly false pretenses, 'constitutes fraud and, despite the so-called merger clause, [plaintiffs are] free to prove that [they were] induced by false and fraudulent misrepresentations to . . . execute the [agreement].'") (citation omitted); *Mankap Enters., Inc. v. Wells Fargo Alarm Servs.*, 427 So. 2d 332, 333-34 (Fla. Dist. Ct. App. 1983) ("The law is settled that a party cannot contract against liability for his own fraud in order to exempt him from liability for an intentional tort, and any such exculpatory clauses are void as against public policy."); *Slack v. James*, 614 S.E.2d 636, 641 (S.C. 2005) ("A party should not be given the opportunity to free himself from an allegation of fraud by incorporating a generalized non-reliance clause into a contract.").

¶ 29    Weiman does not dispute that she intentionally concealed the existence of the SIL DOTs from Wine or that she intended for him to sign the settlement agreement believing that the only encumbrances on the rentals were bank loans and the Wine DOT. Such intentional acts are not capable of protection through contract

language, and construing the provisions in the settlement agreement as a waiver of Wine's fraudulent inducement claim would be contrary to public policy. *See Core-Mark Midcontinent, Inc. v. Sonitrol Corp.*, 2012 COA 120, ¶ 16 ("Because of the egregiously wrongful nature of the conduct, enforcing a limitation of liability provision to shield a party from the consequences of such conduct is deemed to be contrary to public policy.").

¶ 30    We thus conclude that the district court did not err by finding that Weiman fraudulently induced Wine to enter into the settlement agreement.

## IV.    Breach of Contract

¶ 31    Weiman contends that the district court erred by granting partial summary judgment to Wine on his breach of contract claim. We conclude that no reversible error occurred.

### A.    Governing Law and Standard of Review

¶ 32    "To prove a breach of contract claim, a plaintiff must prove: (1) the existence of a contract; (2) performance by the plaintiff or some justification for nonperformance; (3) failure to perform the contract by the defendant; and (4) resulting damages to the plaintiff." *Marquardt v. Perry*, 200 P.3d 1126, 1129 (Colo. App.

14

2008). "Under contract law, a party to a contract cannot claim its benefit where he is the first to violate its terms." *Coors v. Sec. Life of Denver Ins. Co.*, 112 P.3d 59, 64 (Colo. 2005); *see Sci. Packages, Inc. v. Gwinn*, 301 P.2d 719, 722 (Colo. 1956) (material breach deprives party of right to demand performance by the other party).

¶ 33 "Summary judgment is appropriate only when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law." *S. Cross Ranches, LLC v. JBC Agric. Mgmt., LLC*, 2019 COA 58, ¶ 12; *see* C.R.C.P. 56(c). "The opposing party is entitled to the benefit of all favorable inferences that may reasonably be drawn from the undisputed facts, and all doubts as to the existence of a triable issue of fact must be resolved against the moving party." *Id.* We review summary judgment de novo, applying the same standard as the district court. *Id.* at ¶ 11.

## B. Additional Background

¶ 34 In his motion for summary judgment, Wine argued that Weiman and Conquest breached the settlement agreement by collecting October 2018 rent for the rentals, which Wine was entitled to under the agreement. Specifically, in his statement of undisputed material facts, Wine asserted that "[w]hen Wine went to

15

collect rent on October 1, 2018, he was advised by the tenants they had already paid October rent to Conquest a few days prior."

¶ 35 Weiman admitted in her response that this was true. However, she argued that her breach was excused because Wine had breached the settlement agreement *first*, in two ways: (1) he "failed to make the first mortgage payments on October 1, 2018"; and (2) while he recorded the quitclaim deeds to the rentals on October 1, 2018, he did not release the Wine DOT until two and a half months later, on December 17, 2018.

¶ 36 The district court granted summary judgment to Wine, finding that Weiman and Conquest breached the settlement agreement when they "collected rents for the [rentals] for October 2018 and did not remit those rents to Wine."  In doing so, the court rejected Weiman's arguments that Wine had breached the settlement agreement first.  Regarding the October mortgage payments, the court found that there was no evidence to rebut Wine's affidavit explaining that he made the mortgage payments on time but that the bank initially failed to process them because Weiman had not provided him with all of the necessary payment information.  And

16

regarding the Wine DOT, the court found that Wine had no duty under the settlement agreement to release it.

## C. Discussion

¶ 37    Weiman argues, Wine appears to concede, and we agree that the court erred by finding that Wine had no duty to release the Wine DOT encumbering Arapahoe and the rentals. The settlement agreement begins with references to "that certain Promissory Note dated June 1, 2017 for $570,000" and "that certain Deed of Trust dated June 1, 2017 . . . securing the Note." The "Deed of Trust dated June 1, 2017" is undisputedly the Wine DOT. The settlement agreement then provides that, "[u]pon recording of the Quit Claim Deeds, Wine shall release the [Wine] DOT and deem the Note paid in full." The district court was thus mistaken when it found that "Wine had no . . . duty" under the settlement agreement "to release a Deed of Trust on" Arapahoe.

¶ 38    We conclude, however, that the error was harmless. *See* C.A.R. 35(c); C.R.C.P. 61 ("The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties."). The settlement agreement does not specify exactly when Wine was

required to release the Wine DOT. But even assuming he was required to do so on October 1, 2018, as Weiman argues, it is undisputed that Conquest collected the October 2018 rents, in violation of the settlement agreement, "a few days prior" to October 1. Accordingly, Wine's failure to release the Wine DOT on October 1 cannot support Weiman's argument that Wine breached the settlement agreement first.

¶ 39    We thus discern no reversible error in the district court's grant of summary judgment to Wine on his breach of contract claim.

## V.    Evidentiary Ruling

¶ 40    Weiman contends that the district court erred by excluding certain evidence. We disagree.

### A.    Governing Law and Standard of Review

¶ 41    Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." CRE 401. Generally, all relevant evidence is admissible, and evidence that is not relevant is not admissible. CRE 402. But under CRE 403, relevant evidence may be excluded if its probative value is substantially outweighed by the danger of

18

unfair prejudice, confusion of the issues, potential to mislead the jury, undue delay, waste of time, or needless presentation of cumulative evidence.

¶ 42 "A trial court has considerable discretion in ruling upon the admissibility of evidence, and we will find an abuse of discretion only if its ruling is manifestly arbitrary, unreasonable, or unfair." *Wark v. McClellan*, 68 P.3d 574, 578 (Colo. App. 2003).

## B. Additional Background

¶ 43 Two and a half years after Weiman's breach of contract counterclaim was dismissed with prejudice, her counsel sought "judicial leniency" from the court to "revive" it based on new evidence. At a pretrial conference in September 2022, Weiman's counsel explained that Wieman and Conquest remained "adamant" that Wine had breached the settlement agreement first by failing to timely pay the October 2018 mortgages. Although Wine had produced copies of the October 2018 mortgage payment checks years earlier, Weiman's counsel explained that Weiman and Conquest had taken the checks to a bank "less than a week ago" and had gotten an affidavit from a branch operations manager stating that the checks were not actually "processed thru a bank"

until December 2018.  Counsel explained that, based on this affidavit, Wieman and Conquest were convinced that Wine had committed fraud by backdating the checks.

¶ 44     The court declined to consider the bank manager's affidavit, noting that it would not allow Weiman and Conquest "to start relitigating issues that were dismissed with prejudice."  A year later, in October 2023, Weiman filed a pro se C.R.C.P. 60(b)(2) motion asking the court to consider the affidavit and allow her to "resurrect" her breach of contract counterclaim "based on newly discovered evidence that uncontrovertibly shows [Wine] (and his minions) committed frauds upon this court."  The court found that the motion was "inappropriate" and denied it.

### C.    Discussion

¶ 45     Weiman argues that the bank manager's affidavit was "relevant and material" to her contention that Wine breached the settlement agreement first by failing to make the October 2018 mortgage payments in a timely manner and that the court therefore "should have allowed [her] to use" it to revive her breach of contract counterclaim.  We are not persuaded.

¶ 46    First, Wine had already explained at the summary judgment stage that the bank had at first "failed to properly apply" his October 2018 mortgage payments because Weiman had not provided him with the proper payment information.  The bank manager's affidavit stating that Wine's checks were not processed until December 2018 was thus consistent with Wine's own account and, contrary to Weiman's argument, did not suggest that Wine had fraudulently backdated the checks.  (Indeed, Wine testified at trial that his October 2018 mortgage payments were initially rejected by the bank because they lacked "the right information, the account number and the loan number and all the information we needed [to make] the payment.")  Because the bank manager's affidavit was cumulative of Wine's own affidavit and testimony, it provided no grounds for reviving Weiman's dismissed counterclaim.

¶ 47    Second, even assuming that the court erred by excluding the bank manager's affidavit, we conclude that any error was harmless.  Weiman's breach of contact counterclaim was based on the assertion that Wine breached the settlement agreement *first* — as relevant here, because he "failed to make the first mortgage payments on October 1, 2018."  But the court granted summary

judgment to Wine based on Weiman and Conquest's admission that Conquest collected the October 2018 rent payments, in violation of the settlement agreement, "a few days prior" to October 1, 2018. Accordingly, even if the bank manager's affidavit had demonstrated that Wine failed to make the mortgage payments by October 1, 2018, it would not have affected the court's conclusion that Weiman and Conquest breached the settlement agreement first.

¶ 48     For these reasons, we discern no reversible error in the court's exclusion of the bank manager's affidavit.

## VI.     Conspiracy

¶ 49     Finally, Weiman contends that the district court erred by finding that she participated in a civil conspiracy that caused Wine to suffer damages.  We disagree.

### A.     Governing Law and Standard of Review

¶ 50     "A claim for civil conspiracy has the following elements: (1) two or more persons; (2) an object to be accomplished; (3) a meeting of the minds on the object or course of action; (4) an unlawful overt act; and (5) damages as the proximate result thereof." *Stauffer v. Stegemann*, 165 P.3d 713, 718 (Colo. App. 2006).

¶ 51    We review the district court's findings of fact for clear error and its legal conclusions de novo. *Fear*, ¶ 15.

## B.    Discussion

¶ 52    Weiman contests only two elements of the district court's conspiracy finding: an unlawful overt act and damages.

¶ 53    The district court found, with record support, that Weiman participated in the following unlawful overt acts: She intentionally withheld material information about the SIL DOTs encumbering Elkhart and Joliet during her deposition; she failed to disclose those encumbrances when she entered into the settlement agreement; and she participated in the attempted cover up of Conquest's physical attack on Wine when she went to the girlfriend's house after Conquest asked her to destroy evidence there. Although Weiman asserts, without elaboration, that she "engaged in no unlawful overt acts," she does not specifically dispute any of these well-supported findings.

¶ 54    Next, Weiman argues that, even if she undertook an unlawful overt act, "[a]ny damages Wine incurred were of his own doing" when he agreed to the "Unknown Facts" provision in the settlement agreement "and did not review title" to the rentals. But as

previously discussed, Weiman's deliberate fraud is not capable of protection through contract language, and a title search would not have revealed the SIL DOTs because, as the district court found, they were "purposefully" not recorded until after the settlement agreement was signed. We therefore cannot agree that Wine's damages were "of his own doing."

¶ 55 We thus conclude that the district court did not err by finding that Weiman participated in a civil conspiracy.

## VII. Attorney Fees

¶ 56 Wine requests an award of his appellate attorney fees as a sanction under section 13-17-102(2), C.R.S. 2024, on the ground that Weiman's appeal is frivolous, groundless, and vexatious. We deny this request. Although Weiman did not prevail, we do not agree that her appeal was frivolous or lacking in substantial justification. *See In re Marriage of Boettcher*, 2018 COA 34, ¶ 38 ("Fees should be awarded only in clear and unequivocal cases when the appellant presents no rational argument, or the appeal is prosecuted for the purpose of harassment or delay."), *aff'd*, 2019 CO 81.

## VIII. Disposition

¶ 57    The judgment is affirmed.

CHIEF JUDGE ROMÁN and JUDGE BERGER concur.