The summaries of the Colorado Court of Appeals published opinions
constitute no part of the opinion of the division but have been prepared by
the division for the convenience of the reader.  The summaries may not be
cited or relied upon as they are not the official language of the division.
Any discrepancy between the language in the summary and in the opinion
should be resolved in favor of the language in the opinion.

SUMMARY
April 18, 2019

## 2019COA58

## No. 18CA0161, *Southern Cross Ranches v. JBC Agricultural Management* — Civil Procedure — Summary Judgement

A division of the court of appeals concludes that under

C.R.C.P. 56, if the nonmoving party fails to oppose a summary

judgment motion, a trial court is not required to review the entire

record on file for factual disputes before ruling on a summary

judgment motion.  The division further concludes that in this case

the trial court abused its discretion by making inconsistent rulings,

first denying and then granting summary judgment, without

explanation.

Court of Appeals No. 18CA0161
Weld County District Court No. 16CV30552
Honorable Todd L. Taylor, Judge

_____

Southern Cross Ranches, LLC, and Ranch Management, LLC,

Plaintiffs-Appellees,

v.

JBC Agricultural Management, LLC,

Defendant-Appellant,

and

Crystal River Meat, LLC,

Third-Party Plaintiff-Appellant.

_____

JUDGMENTS REVERSED AND CASE
REMANDED WITH DIRECTIONS

Division III
Opinion by JUDGE WEBB
Román and Freyre, JJ., concur

Announced April 18, 2019

_____

Allen Vellone Wolf Helfrich & Factor P.C., Patrick D. Vellone, Jordan Factor, Rachel A. Sternlieb, Lance J. Henry, Denver, Colorado, for Plaintiffs-Appellees

Chipman Glasser, LLC, David S. Chipman, John M. Bowlin, Denver, Colorado, for Defendant-Appellant and Third-Party Plaintiff-Appellant

¶ 1     Everyone would agree that under C.R.C.P. 56, summary judgment is proper only in the absence of any disputed issue of material fact.  But if the nonmoving party fails to oppose a summary judgment motion, must the trial court examine the entire record on file for factual disputes or may the court limit its analysis to materials cited in the motion?  This question is unresolved in Colorado and had divided the federal courts until a 2010 amendment to Fed. R. Civ. P. 56(c)(3), which now provides, "[t]he court need consider only the cited materials, but it may consider other materials in the record."

¶ 2     We conclude that a trial court is not required to review the entire record on file for factual disputes before ruling on a summary judgment motion.  Even so, we further conclude that in this case the trial court abused its discretion by making inconsistent rulings, first denying and then granting summary judgment, without explanation.  Therefore, we reverse the summary judgments and remand for further proceedings.

I.  Background and Procedural History

¶ 3     JBC Agricultural Management, LLC, entered into separate contracts to buy cattle from plaintiffs Southern Cross Ranches,

LLC, and Ranch Management, LLC (collectively, sellers). In turn, JBC contracted to sell the cattle to Crystal River Meat, LLC, its subsidiary (collectively, buyers). Sellers brought this action alleging that JBC had breached the contracts by failing to make any payments, starting with an initial payment due in October 2015. JBC counterclaimed alleging, as relevant here, that after the initial payment deadlines had been extended, sellers breached the contracts by failing to certify, source, feed, and care for the cattle as required by the contracts, and then by failing to provide adequate assurances that they would do so. Crystal River intervened and made similar allegations in a third-party complaint.

¶ 4    After substantial discovery had been taken, JBC moved for summary judgment on its breach of contract counterclaim. JBC supported the motion with an affidavit from its principal, Tai W. Jacober (Jacober affidavit), detailing problems with the cattle and referencing emails that Jacober averred confirmed extension of the

initial payment deadline.  Sellers opposed the motion with counter affidavits and an outspoken brief.[1]

¶ 5     On June 12, 2017, in a lengthy written order, the trial court began by saying

> Because JBC has not met its burden to show that there is not a genuine dispute about whether it breached the purchase agreements at issue before the [sellers'] alleged breach, I deny the motion.  I also deny JBC's motion because a genuine dispute exists as to the issue of adequate assurances.

The court recognized JBC's admission that "it did not make the initial payment due under the agreements."  Then the court noted JBC's assertion that "the parties modified the terms of the agreements through email and agreed to defer the initial payment due on October 15 to a later date."  But "[t]he plaintiffs responded by submitting affidavits . . . both asserting that neither of the plaintiffs expressly or impliedly agreed to modify JBC's obligation to make the first payment."

---

[1] In opposing the summary judgment motion, sellers argued: "The notion that JBC's counterclaim is fit for summary judgment is laughable"; "Other disputes barring summary judgment are of the he-said-she-said variety of which JBC knew full well before filing its motion"; and "Why JBC chose to waste Court and party resources with its summary judgment motion is unfathomable."

¶ 6    Shortly thereafter, and less than a month before the then-scheduled trial date, counsel for buyers moved to withdraw, citing nonpayment. The trial court granted the motion and reset the trial to February 5, 2018. The case remained dormant until November 3, 2017, when sellers moved for summary judgment on all claims, counterclaims, and third-party claims.

¶ 7    Because buyers were still without counsel, they could not oppose the motion. *See Woodford Mfg. Co. v. A.O.Q., Inc.*, 772 P.2d 652, 653 (Colo. App. 1988). The trial court signed the summary judgment orders tendered by sellers, one of which entered judgment against JBC for approximately $2,500,000 plus interest, costs, and attorney fees; the other dismissed the counterclaims and Crystal River's third-party complaint. The orders did not mention any aspect of the earlier summary judgment proceeding.

¶ 8    Four weeks later, new counsel entered their appearance for buyers. Counsel moved to vacate the summary judgment orders under C.R.C.P. 60(b)(5). According to the motion, the trial court had improperly entered the summary judgment orders without having considered "the entire record, and its own prior holdings, which demonstrated the existence of genuine issues of material

4

fact." The court denied the motion, explaining only that "[b]ecause [buyers] have a remedy — an appeal — relief under C.R.C.P. 60(b)(5) is not appropriate."[2]

¶ 9 Buyers now contend the summary judgments should be set aside on four grounds. First, because sellers submitted conclusory affidavits, they failed to meet their burden to prove the nonexistence of a genuine issue of material fact. Second, the materials supporting JBC's earlier summary judgment motion, which the trial court should have considered, established disputed issues of material fact. Third, the trial court did not cite any exception to the law of the case doctrine in disregarding its earlier summary judgment order finding disputed issues of material fact. And fourth, the court denied buyers due process by entering summary judgment against them after having explained in allowing their counsel to withdraw that they could not lose on the merits until trial.

¶ 10 Sellers agree that the first three contentions were preserved. Buyers concede that the fourth assertion was not preserved.

---

[2] Because buyers have not appealed this ruling, we express no opinion on the trial court's rationale.

5

Because we agree with buyers that the trial court's inconsistent summary judgment rulings require reversal, we do not reach the fourth contention.

## II. Summary Judgment

### A. Standard of Review and General Law

¶ 11     Summary judgment is reviewed de novo, applying the same standard as the trial court. *City of Fort Collins v. Colo. Oil*, 2016 CO 28, ¶ 9. But "arguments and evidence not presented to the trial court in connection with a motion for summary judgment will not be considered on appeal." *Timm v. Reitz*, 39 P.3d 1252, 1255 (Colo. App. 2001).

¶ 12     Summary judgment is appropriate only when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. C.R.C.P. 56(c); *Martini v. Smith*, 42 P.3d 629, 632 (Colo. 2002). The opposing party is entitled to the benefit of all favorable inferences that may reasonably be drawn from the undisputed facts, and all doubts as to the existence of a triable issue of fact must be resolved against the moving party. *Martini*, 42 P.3d at 632.

¶ 13    Summary judgment allows the parties to "pierce the formal allegations of the pleadings and save the time and expense connected with trial when, as a matter of law, based on undisputed facts, one party could not prevail." *Peterson v. Halsted*, 829 P.2d 373, 375 (Colo. 1992).  Yet, summary judgment "is a drastic remedy, to be granted only when there is a clear showing that the applicable standards have been met." *Cary v. United of Omaha Life Ins. Co.*, 68 P.3d 462, 466 (Colo. 2003).

### B.  The Moving Party's Summary Judgment Burden

¶ 14    Buyers' argument that sellers failed to meet their burden of showing the absence of a disputed issue of material fact falls short.

¶ 15    The burden of establishing the nonexistence of any genuine issue of material fact is on the moving party.  *Civil Serv. Comm'n v. Pinder*, 812 P.2d 645, 649 (Colo. 1991).  To do so, that party must inform the court of the basis for the motion and "identify[] those portions of the record and of the affidavits, if any, which . . . demonstrate the absence of a genuine issue of material fact." *Cont'l Air Lines, Inc. v. Keenan*, 731 P.2d 708, 712 (Colo. 1987).  But "affidavits containing mere conclusions" are not sufficient to meet this burden.  *Smith v. Mehaffy*, 30 P.3d 727, 730 (Colo. App. 2000);

*see Ginter v. Palmer & Co.*, 196 Colo. 203, 207, 585 P.2d 583, 585 (1978) (Summary judgment was improper where the "statements in the affidavit . . . are insufficient to prove or disprove the allegations in the complaint or answer, or are merely self-serving conclusions of the ultimate facts.").

¶ 16    If a nonmoving party fails to respond to a summary judgment motion, the court cannot treat the motion as confessed. C.R.C.P. 121, § 1-15(3) ("Other than motions seeking to resolve a claim or defense under C.R.C.P. 12 or 56, failure of a responding party to file a responsive brief may be considered a confession of the motion."); *see Jules v. Embassy Props., Inc.*, 905 P.2d 13, 15 (Colo. App. 1995) ("Although it may be risky for a party not to respond, the absence of a response does not affect the burden of the party moving for summary judgment to demonstrate that it is entitled to judgment as a matter of law."). Still, "[a]n affirmative showing of specific facts, uncontradicted by any counter affidavits, leaves a trial court with no alternative but to conclude that no genuine issue of material fact exists." *Pinder*, 812 P.2d at 649.

¶ 17    By any reckoning, this case turns on which party breached first. According to sellers' affidavits, JBC breached by failing to

make any payments, including an initial payment due on October 15, 2015. In its answer to the complaint, JBC admits having failed to make payments; but in its counterclaim, JBC alleges that sellers did not perform under the agreements and fraudulently induced JBC to enter into the agreements.

¶ 18     Even so, "the nonmoving party may not rest on its mere allegations or denials of the opposing party's pleadings but must provide specific facts demonstrating a genuine issue for trial." *Colo. Oil*, ¶ 8. And by failing to respond, buyers did not provide the court with any such facts.

¶ 19     The affidavits submitted by sellers aver that "[a]t all times, [sellers] w[ere] ready, willing, and able to perform its obligations under the [agreements]"; that "JBC failed or refused to make any of the payments owing under the [agreements]"; that "JBC had no justification or excuse for these failures"; and that sellers "made no false or misleading statements . . . regarding the terms of the [agreements]." These facts support sellers' claim that JBC breached the agreements by failing to make any payments. And absent any counter affidavits, the court was entitled to accept them as true. *See McDaniels v. Laub*, 186 P.3d 86, 87 (Colo. App. 2008) ("A

motion for summary judgment supported by an affidavit, to which no counteraffidavit is filed, establishes the absence of an issue of fact, and the court is entitled to accept the affidavit as true.").

¶ 20    Be that as it may, buyers point to a discrepancy on the face of the agreement with Ranch Management. Specifically, the agreement requires JBC to pay $100 per head of cattle on October 15, 2015, but it was not signed until November 10, 2015. The affidavit of Ranch Management's manager does not explain this discrepancy. Although buyers did not raise this discrepancy below, we consider it because it is intrinsic to the documents that were before the trial court when it entered the summary judgments. *See Roberts v. Am. Family Mut. Ins. Co.*, 144 P.3d 546, 548 (Colo. 2006). Simply put, sellers failed to establish when JBC's initial payment under the Ranch Management agreement was due.[3]

¶ 21    Despite this discrepancy, the affidavit of the Ranch Management manager avers that JBC failed to make *any* payments under the agreement. So, regardless of when the initial payment

_____

[3] This discrepancy does not appear in the Southern Cross agreement, which was signed on August 25, 2015.

was due, the fact that no payments were ever made remains undisputed.

¶ 22 Buyers' argument that sellers' affidavits were mere conclusory statements of the ultimate fact — that JBC breached the contract — misses the mark. *See Sweet v. TCI MS, Inc.*, 47 So. 3d 89, 94 (Miss. 2010) (breach of contract affidavit was conclusory where it did "not show when or how TCI attempted to obtain financing, or why TCI's available options were unsatisfactory"). Under C.R.C.P. 56(e), affidavits supporting summary judgment "shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein."

¶ 23 After all, sellers' affidavits contain information from persons who have personal knowledge of the agreements (they signed them) and of the operations of Southern Cross and Ranch Management (they manage them). *See People v. Hernandez & Assocs., Inc.*, 736 P.2d 1238, 1240 (Colo. App. 1986) ("The supporting affidavit must contain evidentiary material, which, if the affiant were in court and testifying on the witness stand, would be admissible as part of his testimony."). The affiants aver specific facts showing how sellers

were ready to perform when JBC breached.  These facts are admissible evidence and suffice to support summary judgment.  *See Suncor Energy (USA), Inc. v. Aspen Petroleum Prods., Inc.*, 178 P.3d 1263, 1269 (Colo. App. 2007) ("A conclusory statement made without supporting documentation or testimony is insufficient to create an issue of material fact.").

¶ 24     In sum, we conclude that sellers met their burden of showing the absence of a factual issue on JBC's breach by nonpayment.  So, we turn to the next step of summary judgment review.

### C.  The Nonmoving Party's Burden

¶ 25     Under C.R.C.P. 56(e), if the moving party meets its burden, the burden shifts to the nonmoving party:

> When a motion for summary judgment is made and supported as provided in this Rule, an adverse party may not rest upon the mere allegations or denials of the opposing party's pleadings, but the opposing party's response by affidavits or otherwise provided in this Rule, must set forth specific facts showing that there is a genuine issue for trial.  *If there is no response, summary judgment, if appropriate, shall be entered.*

(Emphasis added.)  Because JBC did not respond, we ask only whether summary judgment was appropriate.  Unsurprisingly,

buyers say "no" because the Jacober affidavit established disputed issues of material fact and the trial court was required to review all materials then "on file." Even accepting buyers' view of this affidavit, we conclude that Rule 56 does not require a trial court to review the record beyond the materials cited in the summary judgment motion and any opposition.

¶ 26    To begin, we return to the language of the rule. C.R.C.P. 56(c) provides in relevant part:

> The judgment sought shall be rendered forthwith *if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits*, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

(Emphasis added.) No Colorado court has addressed whether C.R.C.P. 56(c) requires a court to examine the record beyond the materials cited in the summary judgment motion and any opposition. Because C.R.C.P. 56(c) is "similar to a Federal Rule of Civil Procedure, we may look to federal authority for guidance in construing the Colorado rule."[4]  *Benton v. Adams*, 56 P.3d 81, 86

[4] C.R.C.P. 56(c) is identical to the prior version of Fed. R. Civ. P. 56(c).

13

(Colo. 2002). Still, looking to federal authority only gets us so far; before the 2010 amendment, the circuits were split.

¶ 27 Supporting buyers are cases like *Keiser v. Coliseum Properties, Inc.*, 614 F.2d 406, 410 (5th Cir. 1980), where the court held that summary judgment can be granted only "if *everything in the record* pleadings, depositions, interrogatories, affidavits, etc. demonstrates that no genuine issue of material fact exists." (Emphasis added.) The court explained that "Rule 56 does not distinguish between documents merely filed and those singled out by counsel for special attention[;] the court must consider both before granting a summary judgment." *Id.*; *see Stepanischen v. Merchs. Despatch Transp. Corp.*, 722 F.2d 922, 930 (1st Cir. 1983) ("Failure of the nonmoving party to match the length and quality of the moving party's papers does not automatically relieve the court of its statutory task of determining whether 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact.'" (quoting Fed. R. Civ. P. 56(c))).

¶ 28 Supporting sellers are cases such as *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996), where the court held that "[i]t is not [the

14

task of the court] to scour the record in search of a genuine issue of triable fact." (Citation omitted.) Instead, the court must be able to rely "on the nonmoving party to identify with reasonable particularity the evidence that precludes summary judgment." *Id.* (citation omitted); *see Bennett v. Dr Pepper/Seven Up, Inc.*, 295 F.3d 805, 808-09 (8th Cir. 2002) ("The court was not bound, by rule or otherwise, to search the record for genuine issues of fact, when Bennett failed to bring such issues to the attention of the court in a timely-filed response to the motion for summary judgment."); *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991) (When reviewing summary judgment, "[j]udges are not like pigs, hunting for truffles buried in" the record).[5]

¶ 29    Widening our inquiry, *Guarino v. Brookfield Township Trustees*, 980 F.2d 399, 404 (6th Cir. 1992), expands on the reasoning behind the latter approach. The court held that "[n]othing in either the Rules or case law supports an argument

---

[5] An earlier seventh circuit case held in "reaching its [summary judgment] determination the court has the power to penetrate the allegations of fact in the pleadings and look at any evidential source to determine whether there is an issue of fact to be tried." *Mintz v. Mathers Fund, Inc.*, 463 F.2d 495, 498 (7th Cir. 1972).

that the trial court must conduct its own probing investigation of the record." *Id.* at 405. Then it went on to explain that requiring a trial court to do so

> would leave nothing to discourage the non-moving party, especially one with a reasonably arguable case, from declining (or "forgetting" or being "too busy") to respond to a motion for summary judgment, secure in the knowledge that the [trial] court would be required to excavate all of the presented record, and find for itself any nuggets of evidence that might demonstrate genuine issues of material fact.

*Id.*

¶ 30 Even worse, as the *Guarino* court pointed out, if summary judgment were granted,

> [the] passive party could still relax, assured that [it] could timely file an appeal, flyspeck the factual record . . . and only then, on *de novo* review, identify for the court of appeals the answers, the exhibits and the other facts [they] wish[] to assert as supporting specific issues. Indeed, precisely because the review is de novo, with the appellate court standing in the same position as did the trial court, no principle exists under appellants' argument that could legitimately deflect a nonmoving party's insistence that the appellate panel *itself* assume the duty to search for genuine issues. What concept of judicial economy is served when judges (at least one, perhaps as many as

four) are required to do the work of a party's attorney?

*Id.* at 405-06 (citation omitted).

¶ 31      And *Guarino* recognized that requiring a court to do the work of the nonmoving party raises another concern. It is "inappropriate for the court to abandon its position of neutrality in favor of a role equivalent to champion for the non-moving party: seeking out facts, developing legal theories, and finding ways to defeat the motion." *Id.* at 406.

¶ 32      For the following three reasons, we align with those circuits holding that where no opposition is filed, a trial court need not look beyond the materials cited in the summary judgment motion.

¶ 33      First, "when interpreting two statutory sections, we must attempt to harmonize them to give effect to their purposes and, if possible, reconcile them so as to uphold the validity of both." *Gonzales v. Allstate Ins. Co.*, 51 P.3d 1103, 1106 (Colo. App. 2002). C.R.C.P. 56 includes two competing provisions: under C.R.C.P. 56(c), a trial court must enter summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show no genuine issue as to any

17

material fact"; under C.R.C.P. 56(e), the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Were we to interpret C.R.C.P. 56(c) as requiring a trial court to examine the entire record on file before entering summary judgment, the mandate ("must") of C.R.C.P. 56(e) could be disregarded with impunity. *See Pineda-Liberato v. People*, 2017 CO 95, ¶ 39 ("We cannot . . . interpret statutory provisions so as to render any of their words or phrases meaningless or superfluous."). But reading C.R.C.P. 56 as a whole, these two provisions can be reconciled to mean "that whatever establishes a genuine issue of fact must both be in the . . . court file and set forth in the response." *Carmen v. San Francisco Unified Sch. Dist.*, 237 F.3d 1026, 1029 (9th Cir. 2001).

¶ 34    Second, interpreting C.R.C.P. 56(c) as not requiring a trial court to search the entire record would be consistent with Colorado cases recognizing that the parties are responsible for alerting appellate courts to portions of the record supporting their arguments. *See Mauldin v. Lowery*, 124 Colo. 234, 236, 255 P.2d 976, 977 (1953) ("Our Court will not search through briefs to discover what errors are relied on, and then search through the

record for supporting evidence."); *Valentine v. Mountain States Mut. Cas. Co.*, 252 P.3d 1182, 1186 (Colo. App. 2011) ("When a party does not point us to where an issue was raised and resolved, he 'place[s] the burden of searching records on us' — a search we are not required to undertake." (quoting *O'Quinn v. Baca*, 250 P.3d 629, 631 (Colo. App. 2010))); *Brighton Sch. Dist. 27J v. Transamerica Premier Ins. Co.*, 923 P.2d 328, 335 (Colo. App. 1996) ("[I]t is not the duty of the reviewing court to search the record for evidence to support bald assertions.").  We discern no principled basis on which to exempt appellate courts from this burden while imposing it on trial courts.

¶ 35     Third, this interpretation comports with Colorado cases that decline to consider a new argument on appeal opposing summary judgment.  *See White v. Progressive Mountain Ins. Co.*, 62 P.3d 1074, 1077 (Colo. App. 2002) (declining to address a new argument raised in opposition to the summary judgment).  Requiring courts to scour the record for disputed facts would allow a party opposing summary judgment to remain silent below, only to point out

disputed facts to an appellate court that the trial court had not found and obtain a reversal.[6]

¶ 36    Alternatively, buyers argue that the trial court should have examined the entire record because they were unrepresented by counsel during the second summary judgment proceeding. But Colorado courts do not provide special treatment to unrepresented litigants, at least in civil cases. *See Negron v. Golder*, 111 P.3d 538, 541 (Colo. App. 2004) (Pro se parties are "bound by the same rules of civil procedure as attorneys licensed to practice law."); *see also Jacobsen v. Filler*, 790 F.2d 1362, 1364-65 (9th Cir. 1986) (where a pro se litigant failed to respond to a summary judgment motion, the court held "*pro se* litigants in the ordinary civil case should not be treated more favorably than parties with attorneys of record").[7]

---

[6] Of course, "it has . . . long been within the discretion of appellate courts to address an error appearing of record." *Roberts v. Am. Family Mut. Ins. Co.*, 144 P.3d 546, 550 (Colo. 2006); *see* C.A.R. 1(d). However, because we reverse the summary judgments for other reasons, we decline buyers' invitation to do so.

[7] Contrary federal authority cited by buyers is limited to pro se cases brought by prisoners. *See Hudson v. Hardy*, 412 F.2d 1091, 1094 (D.C. Cir. 1968) ("[T]he requirements of the summary judgment rule may not fairly be applied 'with strict literalness' to a prisoner unrepresented by counsel and subject to the 'handicaps . . . detention necessarily imposes upon a litigant.'") (citation omitted).

¶ 37    In the end, we conclude that under C.R.C.P. 56(c), a trial court is not required to review the record beyond the material cited in a summary judgment motion and any opposition.  So, we necessarily further conclude that buyers cannot rely on the Jacober affidavit to show a disputed issue of material fact.

### III.  The Trial Court's Inconsistent Rulings

¶ 38    Buyers next contend the trial court erred by entering summary judgment in favor of sellers because the court departed from its earlier summary judgment ruling that found disputed material facts without explanation.  Despite our conclusion requiring only limited record review concerning factual issues before deciding an unopposed summary judgment motion, we agree that the court's failure to reconcile its inconsistent prior ruling constituted an abuse of discretion which requires us to reverse the summary judgments.

### A.  Law of the Case Doctrine

¶ 39    Initially, buyers argue that the trial court erred by entering summary judgment because its prior ruling denying summary judgment constituted the law of the case.  This argument misinterprets the law of the case doctrine.

21

¶ 40    The law of the case doctrine is a discretionary rule providing that courts should generally follow prior rulings in a case. *In re Estate of Walter*, 97 P.3d 188, 191 (Colo. App. 2003). The doctrine applies to decisions of law, not to findings of fact or preliminary rulings. *Paratransit Risk Retention Grp. Ins. Co. v. Kamins*, 160 P.3d 307, 313 (Colo. App. 2007). For these reasons, the law of the case does not apply to a denial of a summary judgment motion. *See Gavend v. Malman*, 946 P.2d 558, 561 (Colo. App. 1997) (The law of the case doctrine "does not preclude a second judge assigned to a case from considering a motion for summary judgment denied by a previous judge, even if based upon the same issues."). And in any event, courts have "never . . . held that the 'law of the case' doctrine prevents a trial court from clarifying or even revisiting its prior rulings." *In re Bass*, 142 P.3d 1259, 1263 (Colo. 2006).

¶ 41    So, we turn to a trial court's discretion to depart from a prior ruling.

### B. Trial Court Discretion to Revisit Prior Rulings

¶ 42    Next, buyers argue that "[t]he trial court articulated no reason for departing from its prior ruling regarding JBC's summary judgment motion. And there is no record evidence providing a good

reason."  At oral argument, sellers agreed that no further discovery had been taken between the two motions.

¶ 43    In general, "[e]very ruling or order made in the progress of an on-going proceeding may be rescinded or modified during that proceeding upon proper grounds."  *Broyles v. Fort Lyon Canal Co.*, 695 P.2d 1136, 1144 (Colo. 1985); *see* C.R.C.P. 54(b) (Any order not made final "is subject to revision at any time before the entry of judgment adjudicating all the claims . . . .").  But in this context, what is meant by "upon proper grounds"?

¶ 44    Upon proper grounds at least requires that the trial court's action be within the bounds of discretion.  A trial court abuses its discretion "when it misconstrues or misapplies the law," *People v. Sieck*, 2014 COA 23, ¶ 5; "fail[s] to exercise discretion," *People v. Darlington*, 105 P.3d 230, 232 (Colo. 2005); or rules in a manner "manifestly against the weight of evidence," *Hytken v. Wake*, 68 P.3d 508, 510 (Colo. App. 2002).

¶ 45    To be sure, the trial court's two summary judgment rulings involved the same question — whether disputed facts exist as to which party breached the agreements first.  In the initial ruling, the court found that "a genuine dispute exists as to whether JBC

23

breached the purchase agreement first." But according to the second ruling, "JBC breached [the] agreement[s] when it failed to make any payment[s] . . . ." Thus, contrary to sellers' assertion, the orders are inconsistent. This inconsistency does not vanish because buyers were movants when the motion was denied and sellers were movants when the motion was granted.

¶ 46 In most cases, we would resolve such a seeming inconsistency by reviewing the trial court's explanation of why its ruling changed. For example, after further discovery, facts may no longer be in dispute. *See Peralta v. Dillard*, 744 F.3d 1076, 1088 (9th Cir. 2014) ("Denial of summary judgment may result from a factual dispute at the time. That dispute may disappear as the record develops."). But the second order did not mention the first order, much less give any reason for reaching the opposite result. For that matter, it did not even expressly find the absence of disputed factual issues.

¶ 47 But even without an explanation, because trial courts are presumed to know and apply the law, appellate courts often overlook similar shortcomings. *See Alamosa Indus. Stores Co. v. Hill*, 74 Colo. 86, 88, 219 P. 210, 211 (1923) ("[W]e must presume the trial court will apply the appropriate rule of law."). But here,

24

because the trial court merely signed the orders tendered by sellers along with their summary judgment motions, "we scrutinize the order more critically." *Chostner v. Colo. Water Quality Control Comm'n*, 2013 COA 111, ¶ 26; *see Uptime Corp. v. Colo. Research Corp.*, 161 Colo. 87, 93-94, 420 P.2d 232, 235 (1966) ("Where the findings of the trial court are verbatim those submitted by the successful litigant, we will . . . scrutinize them more critically and give them less weight than if they were the work product of the [trial court].").  The rationale behind the mandate of critical scrutiny clouds the presumption that the trial court understood and applied the law.  The picture is even murkier here because sellers' summary judgment motion did not mention either buyers' earlier summary judgment motion or the order denying it.

¶ 48    Taking a closer look at the second order, we are unable to discern that the trial court considered its prior summary judgment ruling before making the inconsistent ruling.  In other words, while the court had discretion to disregard its prior ruling, the record does not show that it consciously did so.  And "[a] court's failure to exercise discretion can be an abuse of discretion." *People v. Hardin*, 2016 COA 175, ¶ 30.

¶ 49    So, too, is discretion abused when a ruling is "manifestly against the weight of evidence." *Hytken*, 68 P.3d at 510. Comparing the prior order to the affidavits sellers submitted in support of their summary judgment motions leaves no reasoned doubt that factual issues abound. For example, those affidavits aver that "JBC failed or refused to make any of the payments owing," "JBC had no justification or excuse for these failures," and "neither of the parties amended those terms." But the initial order denying summary judgment recognized JBC's assertion that the parties had modified the agreements "to defer the initial payment due on October 15 to a later date," and recognized that "a genuine dispute exists as to whether JBC breached the agreements first." *See, e.g.*, *Meyerowich v. Carrere Gen. Contractors, Inc.*, 611 So. 2d 41, 43 (Fla. Dist. Ct. App. 1992) ("The trial court made inconsistent rulings when it first determined Rose Meyerowich to be an indispensable party and then prior to the entry of the final judgment, denied her motion to intervene to cure the defect in the pleadings. Under such circumstances we must hold the trial court abused its discretion."); *Haney v. Camp*, 739 S.E.2d 399, 400 (Ga. Ct. App. 2013) ("Because the trial court issued inconsistent rulings

26

. . .[,] we vacate the trial court's order and remand this case for further proceedings consistent with this opinion.").

¶ 50 For these reasons, we conclude that the trial court abused its discretion in entering the summary judgments.

## IV. Conclusion

¶ 51 The summary judgments in favor of sellers are reversed and the case is remanded for further proceedings.

JUDGE ROMÁN and JUDGE FREYRE concur.