24CA1035 Hebert v Ritter 03-20-2025

COLORADO COURT OF APPEALS

---

Court of Appeals No. 24CA1035
City and County of Denver District Court No. 23CV653
Honorable Andrew J. Luxen, Judge

---

Hal Hebert,

Plaintiff-Appellant,

v.

August William Ritter, Jr., a/k/a Bill Ritter, Jr.,

Defendant-Appellee.

---

JUDGMENT AFFIRMED

Division III
Opinion by JUDGE DUNN
Tow and Meirink, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced March 20, 2025

---

Hal Hebert, Pro Se

Womble Bond Dickinson (US) LLP, James M. Lyons, Michelle Gaeng, Denver, Colorado, for Defendant-Appellee

¶ 1    Plaintiff, Hal Hebert, appeals the district court's dismissal of his defamation claim against defendant, August William Ritter, Jr., under the anti-SLAPP statute, section 13-20-1101, C.R.S. 2024.[1] We affirm.

## I.    Background

¶ 2    In 2003, a jury convicted Hebert of first degree murder for killing his wife. The trial court sentenced him to life in prison without the possibility of parole. Since then, Hebert has repeatedly (but unsuccessfully) challenged his conviction and imprisonment in state and federal courts. According to Hebert, he did not kill his wife but was framed by the prosecutors and police officers that worked on his case.

¶ 3    The lead prosecutor on Hebert's case, Kerri Lombardi, was later appointed to the Denver County Court bench. When Judge Lombardi was up for judicial retention in 2022, Hebert paid The Denver Post to circulate a newspaper flier addressed to Denver voters. As relevant here, the flier relayed Hebert's belief that

---

[1] "SLAPP" stands for strategic lawsuit against public participation.

- law enforcement "colluded" with prosecutors, including Judge Lombardi, "to create and present evidence they knew to be untrue in order to convict [him] of a crime he did not commit";

- Judge Lombardi knowingly presented a "false theory" to the jury about how he killed his wife; and

- Judge Lombardi, law enforcement, and the trial judge intentionally "withheld" exculpatory information about a trial witness, Richard White, because "they intended to allow [Hebert] to die in prison in order to protect their careers."[2]

The flier ended with the following question: "SHOULD A DISTRICT ATTORNEY PROSECUTOR WHO HAS ENGAGED IN FALSELY CONVICTING AN INNOCENT MAN BE ALLOWED TO CONTINUE SERVING AS A DENVER DISTRICT COURT JUDGE?"[3]

---

[2] After Hebert's trial, Richard White was charged with and pleaded guilty to several sexual assaults and murders. Hebert's theory is that White killed Hebert's wife.

[3] Judge Lombardi is a Denver County Court judge, not a district court judge.

¶ 4     In response, Ritter (the former Denver District Attorney and former Colorado Governor) wrote a "Guest Commentary" featured in the "Opinion Columnists" section of The Denver Post. The commentary, titled "*Opinion: Don't let a convicted killer sway your vote on this judicial retention,*" explained the history of Hebert's murder conviction and, referencing the decade Ritter and Judge Lombardi had worked together as prosecutors (including on Hebert's case), advocated for her retention. Ritter ended his commentary with the following message for voters:

> In determining whether to retain Judge Lombardi, voters may utilize whatever information they have access to, including the recommendations of the Judicial Performance Commission. What I hope Denver voters do not consider are the baseless allegations of a convicted murderer written from his prison cell in the Colorado Department of Corrections.

¶ 5     Representing himself, Hebert brought a defamation claim against Ritter, asserting that Ritter painted him as a "liar" by calling the "facts" in his flier "baseless allegations." Ritter then filed a special motion to dismiss under the anti-SLAPP statute.

¶ 6     In a thorough written order, the district court granted the motion and dismissed Hebert's complaint with prejudice,

concluding that the anti-SLAPP statute covered Ritter's statements and that Hebert failed to show a reasonable likelihood of prevailing on his defamation claim.[4]

## II.     Analysis

¶ 7     Hebert contends that the district court erred by concluding he failed to show a reasonable likelihood of prevailing on his defamation claim.  We disagree.

### A.     Legal Principles and Standard of Review

¶ 8     The General Assembly enacted the anti-SLAPP statute "to encourage and safeguard the constitutional rights of persons to petition, speak freely, associate freely, and otherwise participate in government to the maximum extent permitted by law and, at the same time, to protect the rights of persons to file meritorious lawsuits for demonstrable injury." § 13-20-1101(1)(b).  To balance these interests, the statute provides a mechanism — a special motion to dismiss — through which a court can weed out, at an early stage, unmeritorious lawsuits brought in response to a defendant's petitioning or speech activity.  *Tender Care Veterinary*

---

[4] Though thorough, the district court's order relies primarily on California precedent despite available Colorado precedent.

*Ctr., Inc. v. Lind-Barnett*, 2023 COA 114, ¶ 12 (*cert. granted* Sept. 3, 2024); *see* § 13-20-1101(3)(a).

¶ 9    The statute lays out a two-step process for resolving a special motion to dismiss. *Tender Care*, ¶ 13. At the first step, the defendant must show that the anti-SLAPP statute applies; that is, that the claim arises from the defendant's exercise of free speech or right to petition in connection with a public issue. *Id.* At the second step, if the statute applies, the burden shifts to the plaintiff to show a reasonable likelihood of prevailing on the claim. *Id.* at ¶ 14. If the plaintiff fails to make such a showing, the court must grant the special motion to dismiss. *Id.*

¶ 10    We review de novo a district court's ruling on a special motion to dismiss. *Id.* at ¶ 15.

B.    The District Court Properly Dismissed the Defamation Claim

¶ 11    Both parties agree that Ritter satisfied the first step and that the anti-SLAPP statute applies. The dispute centers on the second step. Hebert maintains that the district court erred by concluding he failed to show a reasonable likelihood of prevailing on his defamation claim.

¶ 12    Ordinarily, to prevail on a defamation claim, a plaintiff must prove that the defendant made a defamatory statement to a third party, with fault amounting to at least negligence, and special damages caused by the defamatory statement (or the actionability of the statement regardless of special damages). *See Anderson v. Senthilnathan*, 2023 COA 88, ¶ 12.

¶ 13    But when the alleged defamatory statement concerns a public figure or a matter of public concern — as the parties agree it does here — the plaintiff's burden is heightened. *Id.* at ¶ 13. In these cases, the plaintiff must (1) prove the statement's falsity by clear and convincing evidence; (2) prove by clear and convincing evidence that the defendant made the statement with actual malice; and (3) establish actual damages, even if the statement is defamatory per se. *Id.* Clear and convincing evidence is evidence that is "highly probable and free from serious or substantial doubt." *Id.* (quoting *Creekside Endodontics, LLC v. Sullivan*, 2022 COA 145, ¶ 36).

¶ 14    We recognize that divisions of this court differ on how to apply this second step. *Compare L.S.S. v. S.A.P.*, 2022 COA 123, ¶ 23 (adopting California's "summary judgment-like procedure" under

6

which the court accepts the plaintiff's evidence as true), *with Salazar v. Pub. Tr. Inst.*, 2022 COA 109M, ¶ 21 (explaining courts should "neither simply accept the truth of the allegations nor make an ultimate determination of their truth" but rather "assess whether the allegations and defenses are such that it is reasonably likely that a jury would find for the plaintiff"). We needn't wade into the differences, however, because — as explained later — the result is the same regardless of which procedure we apply.

¶ 15    To satisfy his step-two burden, Hebert must establish, among other things, that he will be able to produce clear and convincing evidence that Ritter's "baseless allegations" statement about Hebert's flier was false.

¶ 16    A statement is false if the substance or gist of the statement was inaccurate. *Jogan Health, LLC v. Scripps Media, Inc.*, 2025 COA 4, ¶ 23.

¶ 17    To support his defamation claim, Hebert submitted a sworn complaint, his flier, the letters he wrote to Judge Lombardi and Ritter requesting they admit wrongdoing, and Ritter's commentary. Hebert's materials collectively reflect his position that he was wrongfully convicted of his wife's murder and, in particular, his

7

subjective belief that Judge Lombardi and others colluded to fabricate evidence against him; that she knowingly presented a false theory to the jury; that she and others intentionally withheld exculpatory information from him about a trial witness; and that Ritter called these "facts" "baseless allegations" to undermine Hebert and protect Judge Lombardi.

¶ 18    In response, Ritter filed a special motion to dismiss that denied that he made false statements.  Ritter included in his motion a request that the court judicially notice Hebert's murder conviction and ten related cases from state and federal courts rejecting, as pertinent here, Hebert's claims that (1) the search warrant contained intentionally false and inaccurate statements; (2) a detective coerced and intimidated witnesses; (3) the prosecution violated his right to exculpatory evidence by failing to disclose information about White; and (4) newly discovered evidence entitled

Hebert to a new trial. Hebert didn't object to Ritter's request, and the court judicially noticed these cases.[5]

¶ 19     Ritter also attached to his motion a twenty-eight-page independent report authored by the Denver District Attorney Conviction Review Unit (CRU). The report outlines the CRU's "exhaustive review of [Hebert's] claims," which "included examination of the underlying case" and "an independent investigation" with "additional witness interviews and DNA testing." The report concludes that

- there was no "credible evidence that [Hebert] is actually innocent";

- information about White's later crimes was not discovered by law enforcement and prosecutors before Hebert's trial,

---

[5] Hebert now argues that the district court erred by judicially noticing these cases. While we recognize that Hebert is self-represented, he is bound by the same procedural rules that apply to represented parties. *See S. Cross Ranches, LLC v. JBC Agric. Mgmt., LLC*, 2019 COA 58, ¶ 36. To preserve an objection in a civil case, a party must raise it before the district court. *See Melat, Pressman & Higbie, L.L.P. v. Hannon L. Firm, L.L.C.*, 2012 CO 61, ¶ 18. Because Hebert didn't object to Ritter's request, he waived the objection. *See id.*

but even if it had been, it was "not material" to Hebert's case;

- there was no evidence that White or another "alternate suspect" killed Hebert's wife; instead, "[a]ll" of the evidence "strongly suggests that the only suspect was [Hebert]";

- the results of the additional DNA testing "did not change the conclusion that the overwhelming evidence established that [Hebert] murdered" his wife, and given this "significant evidence of guilt," no further DNA testing "would be probative of [Hebert's] claims of innocence"; and

- there was "absolutely no evidence that any member of the prosecution team or law enforcement engaged in any wrongdoing."

¶ 20 Based on the materials presented, Hebert's "evidence" consists of documents he drafted and the bald assertions in his sworn complaint — characterized as "facts" — that he is innocent and was wrongfully convicted. But even assuming Hebert believes all of this, a jury did not, nor did countless courts. And even if Hebert believes that the prosecutors — particularly Judge Lombardi — engaged in unethical prosecutorial practices, an independent investigation

found otherwise.  Hebert presented no competent evidence to support his subjective beliefs and unsubstantiated allegations.  And subjective beliefs and unsubstantiated allegations do not create issues of fact.  *Cf. S. Cross Ranches, LLC v. JBC Agric. Mgmt., LLC*, 2019 COA 58, ¶ 15 (explaining that "affidavits containing mere conclusions" are not sufficient to raise issues of material fact) (citation omitted).  Indeed, beyond his conclusory statements, nothing Hebert presented called into question whether the substance and gist of Ritter's "baseless allegations" statement was inaccurate.  *See Jogan Health*, ¶ 23.  For this reason, whether we apply the procedure under *L.S.S.* or *Salazar*, the result is the same.  That is, under *L.S.S.*, Ritter's showing defeats Hebert's claim as a matter of law.  *See L.S.S.*, ¶ 23.  And, under *Salazar*, Hebert has not demonstrated a reasonable likelihood that he will prevail on his claim.  *See Salazar*, ¶ 21.

¶ 21     Having so concluded, we needn't consider Hebert's arguments relating to actual malice and damages.  *See Anderson*, ¶ 53.  And to the extent that Hebert raises new claims on appeal — for example, those concerning the legitimacy of the CRU report and later

developments with a detective from his case — we don't consider them.  *See Bullock v. Brooks*, 2025 COA 6, ¶ 33.

### III.   The Court Properly Denied Hebert's "Mandatory" Motion for Judicial Notice

¶ 22      Before the court ruled on Ritter's special motion to dismiss, Hebert filed a motion for judicial notice.  In it, Hebert listed some information about a separate court case involving DNA testing.  But it also contained opinions and legal arguments concerning the merits of his conviction and defamation claim.  The court denied Hebert's motion, noting that it may only take judicial notice of facts not subject to reasonable dispute because they are capable of accurate and ready determination by resort to resources whose accuracy cannot be reasonably questioned.  *See* CRE 201(b).

¶ 23      Hebert then filed a second, nearly identical motion — this time captioned "mandatory."  Citing CRE 201(d), he argued the court was required, at his request, to judicially notice the contents of his motion, which included exhibits with unverified news articles and an AI-generated ChatGPT summary about a detective from his case.

¶ 24 The court granted Ritter's motion to dismiss, dismissed Hebert's complaint, and denied his second motion for judicial notice as moot.

¶ 25 Hebert contends that the district court erred by denying his second motion for judicial notice as moot. An issue is moot when the relief sought, if granted, would have no practical legal effect. *See Educ. reEnvisioned BOCES v. Colo. Springs Sch. Dist. 11*, 2024 CO 29, ¶ 26. Hebert doesn't explain how a ruling on the second motion would have had a practical effect on the dismissed defamation claim or would have affected the court's ruling on the motion to dismiss. Nor does he argue any exception to the mootness doctrine. *See id.* at ¶ 27 (listing the mootness exceptions). Because the district court properly dismissed the defamation claim under the anti-SLAPP statute, we conclude that the district court did not err by denying the second motion for judicial notice on mootness grounds.

## IV. Attorney Fees

¶ 26 Ritter requests an award of appellate attorney fees, though not under the anti-SLAPP statute. *See* § 13-20-1101(4)(a). Instead, he requests fees under C.A.R. 38(b), arguing that Hebert's appeal is

frivolous and vexatious. But a self-represented party may be assessed attorney fees only if the court finds that "the party clearly knew or reasonably should have known" that his action or defense was "substantially frivolous, substantially groundless, or substantially vexatious." § 13-17-102(6), C.R.S. 2024. And Ritter neither cites that statute nor argues that Hebert should be assessed fees under it.

¶ 27 Because Ritter doesn't address the standard for awarding fees against a self-represented party, we decline to award appellate attorney fees. *See* C.A.R. 39.1; *Cikraji v. Snowberger*, 2015 COA 66, ¶ 22.

## V. Disposition

¶ 28 We affirm the judgment dismissing Hebert's complaint.

JUDGE TOW and JUDGE MEIRINK concur.